UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY<br><br>*Plaintiff*,<br><br>v.<br><br>AVERTEST, LLC<br>2916 W. Marshall Street, Suite A<br>Richmond, Virginia 23230<br><br>    SERVE ON:<br>    Corporation Service Company<br>    100 Shockoe Slip, Fl. 2<br>    Richmond, Virginia 23219-4100<br><br>    and<br><br>COLUMBIA CASUALTY COMPANY<br>151 N. Franklin Street<br>Chicago, Illinois 60606<br><br>    SERVE ON:<br>    Clerk<br>    State Corporation Commission<br>    1300 E. Main Street<br>    Richmond, Virginia 23219<br><br>*Defendants*. | No. _____ |

# COMPLAINT

Plaintiff Navigators Specialty Insurance Company ("Navigators") brings this action against Avertest, LLC ("Averhealth") and Columbia Casualty Company ("CCC") for declaratory and other appropriate relief to resolve a dispute over insurance coverage.

## NATURE OF THE ACTION

1.       Navigators files this lawsuit to resolve a dispute with Averhealth and CCC over Navigators' and CCC's respective insurance coverage obligations, if any, owed to Averhealth.

2.       Averhealth is a drug testing company that conducts laboratory testing of biological samples, including hair or urine, for the presence of drugs like methamphetamine or cocaine.

3.       On information and belief, CCC provided professional liability insurance coverage on a claims-made basis to Averhealth for the periods between December 17, 2013 and May 1, 2022.

4.       While CCC insured Averhealth, two individuals representing a putative class sued Averhealth. That lawsuit, captioned *Gonzalez v. Avertest, LLC* ("*Gonzalez*"), alleged that Averhealth's decision to prioritize the speed in which it returned test results, over the accuracy of those results, led to poor quality control and needless false positives. The *Gonzalez* plaintiffs were represented by seven Missouri lawyers from three law firms. CCC paid for Averhealth's defense of *Gonzalez*, which was ultimately settled on an individual, not class-wide, basis.

5.       Navigators provided professional liability insurance coverage on a claims-made basis to Averhealth commencing on May 1, 2022, after CCC's coverage terminated.

6. In August 2022, a second suit with very similar allegations was filed by the same lawyers on behalf of eight additional plaintiffs. In *Foulger v. Avertest, LLC* ("*Foulger*"), those plaintiffs alleged that Averhealth's decision to prioritize the speed in which it returned test results, over the accuracy of those results, led to poor quality control and needless false positives.

7. Navigators began paying for Averhealth's defense of *Foulger* and, during its defense, notified CCC that pursuant to certain "related claims" provisions of the CCC and Navigators policies, CCC owed Averhealth a duty to defend *Foulger*. Under these "related claims" provisions, when two "claims" are sufficiently related to one another, they are deemed a single "claim" made during the period of the policy in effect when the earlier "claim" was first made. Navigators contends that under these provisions, *Gonzalez* and *Foulger* are one claim, first made while CCC insured Averhealth, for which CCC owes a duty to defend. CCC disagrees.

8. Navigators brings this action for a judicial declaration that it owes no coverage to Averhealth for *Foulger*, because it is not a "claim" first made during Navigators' policy period; and that because *Gonzalez* and *Foulger* are "related claims," CCC (not Navigators) has a duty to defend Averhealth against *Foulger* and is legally obligated to reimburse Navigators for amounts Navigators spent defending Averhealth against *Foulger*.

## PARTIES

9. Navigators is a New York corporation with its principal place of business in Hartford, Connecticut.

10. Averhealth is a Virginia limited liability corporation with its principal place of business in Richmond, Virginia. Averhealth's sole member is Averhealth Purchaser, LLC, a Delaware limited liability company, and Averhealth Purchaser, LLC's sole member is a Delaware corporation with its principal place of business in Richmond, Virginia.

11. CCC is an Illinois corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

12. There is complete diversity between Plaintiff Navigators, which is a citizen of New York and Connecticut, and Defendants Averhealth and CCC, which are citizens of Virginia, Delaware, and Illinois.

13. The amount in controversy, as described below, exceeds $75,000 (excluding interest and costs), because Navigators seeks declaratory relief with respect to defense costs incurred in Averhealth's defense of *Foulger*, which already exceed $75,000 and will continue to accrue.

14. This Court thus has subject matter jurisdiction under 28 U.S.C. § 1332.

4887-3794-8604, v. 6

## FACTS

### The CCC Policy

15.     CCC issued an insurance policy to Averhealth Holdings, LLC with policy number HMA 4032149325 for the policy period May 1, 2020 to May 1, 2021 (the "CCC Policy").

16.     A true and accurate copy of the CCC Policy is attached to this complaint as Exhibit A.

17.     On Endorsement No. 16 to the CCC Policy, the definition of "**Insured**" was amended to include Averhealth, which was listed as "Avertest LLC DBA Averhealth." Ex. A at 83.

18.     The professional liability coverage part of the CCC Policy provides that CCC:

> … will pay all amounts up to [CCC]'s Limit of Insurance which the **Insured** becomes legally obligated to pay as **damages** as a result of a **claim** arising out of an act, error or omission in the rendering of **professional services** provided that:
>
> A. such **claim** is first made against the **Insured** during the **policy period**, or during the **extended reporting** period, if applicable, and is reported to the **Insurer** in accordance with the section entitled **NOTICE OF CLAIMS AND POTENTIAL CLAIMS** of the **COMMON TERMS AND CONDITIONS**;
>
> B. such act, error or omission happened on or after the retroactive date shown in the Declarations; and
>
> C. prior to the effective date of the **coverage relationship**:

1. no **authorized insured** knew or should have known of a **claim** or a **potential claim**; or

2. no **Insured** had given notice to a prior insurer of any **related claim**.

[CCC] will pay all **defense costs** in connection with a covered **claim**. Such **defense costs** are in addition to the limits of insurance.

*Id*. at 33.

19. The CCC Policy's professional liability coverage part also contains a "**Related Claims**" provision, which provides that "[a]ll **related claims**, wherever made, shall be considered a single **claim** first made during the **policy period** in which the earliest **claim** was first made." *Id*. at 35.

20. With respect to the professional liability coverage part, "**related claim**" is defined to mean "all **claims** arising out of a single act, error or omission or arising out of **related acts, errors or omissions** in the rendering of professional services." *Id*. at 30.

21. With respect to the professional liability coverage part, "**related acts, errors or omissions**" is defined to mean "all acts, errors or omissions negligently committed in the rendering of **professional services** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id*.

### The Navigators Policy

22. Navigators issued an insurance policy to Averhealth Holdings, LLC with policy number CE22HCPZ0B23MNC for the policy period May 1, 2022 to May 1, 2023 (the "Navigators Policy").

23. A true and accurate copy of the Navigators Policy with premium information redacted is attached to this complaint as <u>Exhibit B</u>.

24. The Navigators Policy includes an "Additional Named Insured Endorsement," which amends the Navigators Policy to include Averhealth as a named insured. Averhealth is listed as "Avertest LLC DBA Averhealth." <u>Ex. B</u> at 72.

25. The insuring agreement of the Navigators Policy provides that Navigators:

> shall pay on behalf of the **Insured**, subject to the Limit of Liability … all sums in excess of the Deductible … which the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** as a result of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section **Claims** A., **Claim** Reporting Provision, for **Professional Personal Injury** by reason of any act, error or omission in **Professional Services** rendered or that should have been rendered by the **Insured** or by any person for whose acts, errors or omissions the **Insured** is legally responsible, and arising out of the conduct of the **Insured's Professional Services** provided:
>
> A. the act, error or omission happens during the **Policy Period** or on or after the Professional Liability Retroactive Date … ; and
>
> B. prior to the effective date of this policy no **Insured** had knowledge of or could have reasonably foreseen that such act, error or omission or any fact, circumstance, situation or incident might result in a **Claim**.

*Id*. at 11–12.

26. The Navigators Policy's "**LIMITS OF LIABILITY**" section contains a "**Multiple Insureds, Claims and Claimants**" subsection, which provides:

> More than one **Claim** arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single **Claim**. All

7

such **Claims**, whenever made, shall be treated as a single **Claim**. Such single **Claim**, whenever made, shall be deemed to be first made on the date on which the earliest **Claim** arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Section **Claims** B., Discovery Clause, on the date within the **Policy Period** on which such notice of potential **Claim** is first received by the Company.

*Id*. at 12–13.

27. The Navigators Policy also contains other terms, conditions, and exclusions that limit or eliminate coverage for *Foulger*. For example, Exclusion Y excludes from coverage "any **Claim** that was reported to, or covered under, another program of insurance prior to this policy." *Id*. at 18.

### The *Gonzalez* and *Foulger* Actions

28. In February 2021, Justin Gonzalez and Darrell E. Tullock Jr. brought the *Gonzalez* action in the Circuit Court for the County of St. Louis, Missouri, where it was assigned case number 21SL-CC00937. The case was then removed to the United States District Court for the Eastern District of Missouri, where it was assigned case number 4:21-cv-00403.

29. A true and accurate copy of the initial complaint in *Gonzalez* is attached as Exhibit C.

30. The plaintiffs in *Gonzalez* were represented by seven Missouri lawyers: Richard S. Cornfeld; Daniel S. Levy; Anthony S. Bruning; Anthony S. Bruning, Jr.; Ryan L. Bruning; J.C. Pleban; and C. John Pleban. Ex. C at 24–25. After *Gonzalez* was removed

8

to federal court, two attorneys from Arias Sanguinetti Wang & Torrijos, LLP in California also appeared for the plaintiffs.

31. *Gonzalez* alleged that "Averhealth prioritized the speed in which it returned test results to its customers over ensuring that proper testing methods were followed." ¶ 2. This focus on speed enabled Averhealth to market itself as "a full day faster than most lab-based testing companies." ¶ 18. Because of Averhealth's poor "quality control practices," ¶¶ 20–22, Gonzalez and Tullock both falsely tested positive for amphetamine, methamphetamine, benzoylecgonine, and cocaine, ¶¶ 41, 46–47. As a result, Gonzalez and Tullock lost unsupervised visitation with their respective children.

32. CCC paid for Averhealth's defense of *Gonzalez*, which was ultimately settled on an individual basis.

33. In August 2022, eight new plaintiffs brought the *Foulger* action in the United States District Court for the Eastern District of Missouri, where it was assigned case number 4:22-cv-00878. The complaint in *Foulger* was amended twice—once in January 2023, and again in February 2023.

34. True and accurate copies of the initial complaint, first amended complaint, and second amended complaint from *Foulger* are attached as <u>Exhibits D1</u>, <u>D2</u>, and <u>D3</u>.

35. The plaintiffs in *Foulger* were represented by the same seven Missouri lawyers—Richard S. Cornfeld; Daniel S. Levy; Anthony S. Bruning; Anthony S. Bruning,

Jr.; Ryan L. Bruning; J.C. Pleban; and C. John Pleban—along with three attorneys from Arias Sanguinetti Wang & Torrijos, LLP in California. Ex. D1 at 40.

36.     The *Foulger* plaintiffs alleged that "Averhealth prioritized the speed of its results," placing "speed and corporate growth" ahead of "proper quality control practices." Ex. D3 ¶ 88. This focus on speed enabled Averhealth to market itself as "a full day faster than most lab-based testing companies." *Id*. ¶ 36. Because of "significant problems with Averhealth's quality control practices," *Id*. ¶ 75, Foulger and the other plaintiffs falsely tested positive for cocaine, 6-MAM, amphetamines, methamphetamine, benzoylecgonine, and fentanyl, *Id*. ¶¶ 278–411. The plaintiffs suffered many consequences from the false positives, including losing or limiting custody of children.

37.     *Gonzalez* and *Foulger* both alleged the same root cause for the same injuries: Averhealth's dedication to speed over accuracy.

38.     *Gonzalez* and *Foulger* both alleged the same result: Averhealth's false positive results for the plaintiffs led others to believe that the plaintiffs had used amphetamine, methamphetamine, and cocaine.

39.     *Gonzalez* and *Foulger* both alleged the same consequences to the respective plaintiffs from Averhealth's false positives: frustrating parents' efforts to spend time with their children.

40.     *Gonzalez* and *Foulger* both arose from Averhealth's testing of the same substances in the same laboratory under the same procedures and the same supervision.

41. *Gonzalez* and *Foulger* were brought by mostly the same lawyers and law firms, relying on similar background facts and allegations.

### Navigators Defends Averhealth and Contacts CCC

42. Averhealth tendered its defense of *Foulger* to Navigators in February 2023. By letter dated February 28, 2023, Navigators accepted Averhealth's tender "under a full reservation of all rights and defenses available under the [Navigators Policy]."

43. By letter dated September 14, 2023, after further investigation, Navigators tendered the defense of Averhealth to CCC. CCC rejected Navigators' tender by letter dated September 20, 2023. Although Navigators and CCC have communicated about Navigators' tender since, CCC's position has not changed.

44. To date, Navigators has spent hundreds of thousands of dollars to defend Averhealth against *Foulger*. Navigators expects that it will cost significantly more to defend Averhealth against *Foulger* through trial.

## COUNT I
## DECLARATION THAT NAVIGATORS HAS NO DUTY TO DEFEND

45. Navigators incorporates its above allegations into this count.

46. Under the "**Multiple Insureds, Claims and Claimants**" provision in the Navigators Policy, *Gonzalez* and *Foulger* are a single claim and are both deemed first made in February 2021.

47. This single claim was not "first made against [Averhealth] during the [Navigators Policy's] **Policy Period**." Ex. B at 12.

48. Even if *Foulger* were not deemed first made in February 2021 under the Navigators Policy, it would be excluded from coverage under the Navigators Policy because it is covered under the "related claims" provisions of the CCC Policy. *Id*. at 18.

49. On information and belief, an actual and justiciable controversy exists between Navigators and Averhealth over whether Navigators owes a duty to defend Averhealth against *Foulger*.

WHEREFORE, Navigators requests that this Court enter judgment under 28 U.S.C. § 2201, declaring that Navigators has no duty to defend Averhealth with respect to *Foulger*.

## COUNT II
### DECLARATION THAT NAVIGATORS HAS NO DUTY TO INDEMNIFY

50. Navigators incorporates its above allegations into this count.

51. Because Navigators has no duty to *defend* Averhealth against *Foulger*, Navigators has no duty to *indemnify* Averhealth against any judgment or settlement that results from *Foulger*.

52. On information and belief, an actual and justiciable controversy exists between Navigators and Averhealth over whether Navigators owes a duty to indemnify Averhealth against *Foulger*.

4887-3794-8604, v. 6

WHEREFORE, Navigators requests that this Court enter judgment under 28 U.S.C. § 2201, declaring that Navigators has no duty to indemnify Averhealth with respect to *Foulger*.

## COUNT III
## DECLARATION AS TO NAVIGATORS' RIGHT TO REIMBURSEMENT FROM CCC

53. Navigators incorporates its above allegations into this count.

54. During the period when Navigators paid hundreds of thousands of dollars toward Averhealth's defense against *Foulger*, CCC had a duty to defend Averhealth against *Foulger*. Thus, Navigators discharged an obligation owed by CCC under such circumstances that, among other things, CCC would be unjustly enriched by the retention of the benefit thus conferred.

55. An actual and justiciable controversy exists between Navigators and CCC over whether CCC is obligated to reimburse Navigators for amounts Navigators spent defending Averhealth against *Foulger*.

WHEREFORE, Navigators requests that this Court enter judgment under 28 U.S.C. § 2201, declaring that CCC is legally obligated to reimburse Navigators for amounts Navigators spent defending Averhealth against *Foulger*, and provide such other supplemental relief as may be necessary to enforce that obligation.

## PRAYER

For these reasons, Navigators requests that the Court enter a declaratory judgment resolving the rights and obligations of the parties related to the defense and indemnity of

4887-3794-8604, v. 6

Averhealth against *Foulger* and provide such other and further relief as may be just and proper.

                                                    Respectfully submitted,

Date:   May 31, 2024                /s/ Thomas S. Garrett
                                                Thomas S. Garrett (VSB No: 73790)
                                                HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C.
                                                4951 Lake Brook Drive, Suite 100
                                                Glen Allen, Virginia 23060-9272
                                                Phone:   (804) 747-5200
                                                Fax:       (804) 747-6085
                                                tgarrett@hccw.com

                                                Of Counsel (*pro hac vice* forthcoming):

                                                  Ezra S. Gollogly
                                                  Josph Dudek
                                                 KRAMON & GRAHAM, P.A.
                                                 750 East Pratt Street, Suite 1100
                                                 Baltimore, Maryland 21202
                                                 (410) 752-6030 telephone
                                                 (410) 539-1269 facsimile
                                                 egollogly@kg-law.com

                                                *Attorneys for Navigators Specialty Insurance Company*

4887-3794-8604, v. 6