**EXHIBIT B**

**2022 POLICY**



# THANK YOU FOR BEING OUR POLICYHOLDER




*The Buck's Got Your Back®*



22-GS-856077A



# COMPLIMENTARY CONSULTATION

The Hartford has partnered with national law firm Wilson Elser to offer eligible policyholders* a one-hour consultation with an experienced attorney on topics of interest in the life sciences and other healthcare segments. As a policyholder, you have ready access to this complimentary service.

- MedWatch reports (especially any causation analyses or manufacturer comments) prior to submission to the FDA.

- Labeling changes prior to submission to the FDA.

- Demand letters from potential litigants.

- Periodic safety report obligations prior to submission to the FDA.

- Correspondence received from the FDA and company obligations regarding response.

- Published peer-reviewed medical articles discussing off-label use of the insured's product and associated implications.

- Draft letters prior to submission to the FDA.

- Webinars related to e-Discovery.

- Quality control and risk management.

- Operational issues such as reimbursement.

- Preparation of responses to subpoenas, records requests and government investigations.

- Provision and retention of medical records.

- Healthcare compliance and regulatory such as HIPAA.

- Protection from third-party liability/ contractual indemnification.

- Use of arbitration as an alternate means of dispute resolution.

- Employment related and human resource issues such as EEOC claims and credentialing.

*Per policy term of 12 months or longer

### Daniel Tranen

Daniel Tranen has been practicing law for more than 20 years, with a significant focus on the defense of Life Sciences companies in individual claims and in mass torts. Daniel has represented clients in mass torts involving the national pain pump litigation, the heparin contamination crisis, dozens of cases involving allegedly contaminated flush syringes, the defense (as local counsel) of NECC in the national meningitis outbreak, and most recently cases involving the loosening of knee implants. He has served as national coordinating counsel for medical device manufacturers on several of these mass torts. He also has defended Life Sciences companies in cases involving spinal implants, catheters, infusers, stents, IVC filters, cold therapy devices, dental implants, orthopedic screws and allegedly contaminated allografts.

Daniel is licensed to practice in the state and federal courts of Missouri, Illinois, Georgia and Massachusetts. In addition, he has defended Life Sciences companies in Arizona, California, Florida, Louisiana, Nebraska, Ohio, Pennsylvania, Rhode Island, Texas, and Virginia. Daniel brings extensive experience and strategic thought to each engagement, with the goal of resolving disputes efficiently and in the best interests of his clients.

**https://www.wilsonelser.com/attorneys/daniel_e_tranen**

### Kathleen Warin

Kathleen Warin concentrates her practice on complex civil litigation, with a primary focus on medical device product liability claims. Kathleen has handled high-profile product liability cases in state and federal courts nationwide, including consolidated and multidistrict litigation. She has served as national coordinating counsel in defense of medical device cases in numerous jurisdictions.

Kathleen also serves as monitoring counsel for international insurers to advise them on nationwide mass tort cases that involve medical devices and pharmaceuticals.

Among Kathleen's stellar results was securing summary judgment in multiple cases – venued in state and federal courts – on

behalf of a domestic medical device distributor. Kathleen also successfully obtained dismissal on behalf of a European medical device manufacturer based on lack of jurisdiction in multiple venues. These rulings were critical in helping to resolve similar claims against our clients.

Kathleen likewise has defended class action cases in federal and state court. She also has extensive professional liability

experience, including the defense of medical and legal negligence cases, in addition to other claims of professional negligence.

**https://www.wilsonelser.com/attorneys/kathleen_h_warin**

**To initiate your complimentary consultation, please call: 844 SCI-LIFE (844-724-5433)**

ABOUT WILSON ELSER

More than 800 attorneys strong, our firm serves clients of all sizes, across multiple industries and around the world. Wilson Elser has 38 strategically located offices in the United States and one in London. This depth and scale has made us one of the nation's most influential law firms, ranked in the Am Law 200 and 56th in the National Law Journal 500. Please visit us on the web at **www.wilsonelser.com**.

The material in this document does not bind The Hartford in any manner. This document is provided for informational purposes only, and is not intended to be a representation or summary of any coverage that may exist in any particular situation under a policy issued by The Hartford. Insurance programs or insurance products may not be available to all insureds in all states and policy features may vary by state. Please consult your insurance broker and review the applicable policy for specific terms, conditions, limitations, restrictions and exclusions.

Wilson Elser has agreed to provide this consultation as a service to The Hartford. By using this service, policyholders acknowledge that Wilson Elser is not their attorney and that no attorney-client relationship is created between Wilson Elser and the policyholders. By participating in a one-hour consultation with Wilson Elser, you understand that Wilson Elser is only offering pragmatic guidance and you agree that this forum is not intended to provide legal advice for a specific situation. If you require legal advice with respect to a specific legal matter, Wilson Elser reserves the right to enter into an attorney-client relationship with you. This consultation is not a substitute for reporting a claim. To be eligible for coverage, claims must be reported using the procedures set forth in your insurance policy.

**Navigators**
*Insuring A World In Motion*

# NAVIGATORS SPECIALTY INSURANCE COMPANY

## THIS IS BOTH A CLAIMS MADE AND AN OCCURRENCE INSURANCE POLICY.

**THIS IS A CLAIMS MADE AND AN OCCURRENCE POLICY. THIS POLICY APPLIES TO THOSE PROFESSIONAL LIABILITY CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD, AND TO THOSE GENERAL LIABILITY CLAIMS THAT OCCUR DURING THE POLICY PERIOD. CLAIM EXPENSES ARE WITHIN THE POLICY LIMITS AND REDUCE THE LIMIT OF LIABILITY.**

# ALLIED HEALTHCARE PROFESSIONAL AND GENERAL LIABILITY INSURANCE POLICY DECLARATIONS

**POLICY NUMBER:**    CE22HCPZ0B23MNC

**RENEWAL OF:**    N/A

**PRODUCER  NAME & ADDRESS:**    LOCKTON COMPANIES LLC
751 ARBOR WAY SUITE 250
BLUE BELL, PA 19422

1.    **NAMED INSURED:**    **Averhealth Holdings, LLC**

2.    **ADDRESS:**    **2916 W. Marshall St. Ste A
Richmond, VA 23230**

3.    **POLICY PERIOD:    FROM:    May 1, 2022        TO:    May 1, 2023**
12:01 A.M. Standard Time at the address of the Named Insured as stated in Number 1 above.

4.    **PROFESSIONAL LIABILITY LIMITS OF LIABILITY** (Inclusive of **Claim Expenses**):
　　**A.** $1,000,000        Each **Claim**
　　**B.** $3,000,000        **Aggregate – Professional Liability Coverage Part**

5.    **GENERAL LIABILITY LIMITS OF LIABILITY** (Inclusive of **Claim Expenses**):
　　**A.  Coverage A.**
　　　　1.  $1,000,000        Each **Occurrence**
　　　　2.  $1,000,000        Each **Occurrence – Damage to Premises**
　　**B.  Coverage B.**
　　　　1.  $1,000,000        Each **Claim – Personal and Advertising Injury**
　　　　2.  $1,000,000        **Aggregate**
　　**C.  Coverage C. –**        **Medical Payments**
　　　　$5,000
　　**D.  Aggregate**
　　　　$3,000,000        **Aggregate – General Liability Coverage Part**

6.    **DEDUCTIBLE** (Inclusive of **Claim Expenses**): $10,000        Each **Claim**

7.    **PREMIUM:** ███

8.    **PROFESSIONAL SERVICES:**  Substance Abuse Testing



9.      **PROFESSIONAL LIABILITY RETROACTIVE DATE:  December 7, 2010**

10.     **EXTENDED REPORTING PERIOD** (bilateral)**:**

> 12 Months @ 150% of Annual Premium
> 24 Months @ 175% of Annual Premium
> 36 Months @ 200% of Annual Premium

11.     **NOTICE OF ELECTION:**

Recipient of Notice of Insured's Cancellation:

Navigators Management Company, Inc.
One Hartford Plaza
Hartford, CT 01655

Recipient of Notice of Insured's intention to purchase Extended Reporting Period coverage and premium for Extended Reporting Period coverage:

Navigators Management Company, Inc.
One Hartford Plaza
Hartford, CT 01655

12.     **SUBLIMITS:**

Coverage – Network Security Liability – (in addition to the Limit of Liability)

| | | |
|---|---|---|
| A. | $250,000 | Each Suit – including Claims Expenses |
| B. | $250,000 | Aggregate – including Claims Expenses |

| | | |
|---|---|---|
| Deductible | $10,000 | Each Suit |

13.     **FORMS, NOTICES AND ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**

| | |
|---|---|
| NAV-HCP-OCC-DEC (01/21) | Allied Healthcare Professional Liability and GL (OCC) Dec Page |
| NAV-HCP-OCC-POL (11/14) | Allied Healthcare Professional Liability and GL (OCC) Policy |
| 1. NAV-HCP-157 (12/16) | Network Security and Privacy Endorsement |
| 2. NAV-HCP-PHN-200 (04/17) | Claims Reporting Procedure |
| 3. NAV-HCP-164 (04/15) | Supplementary Payments Endorsement |
| 4. NAV-HCP-166 (04/15) | Claims Expenses in Addition to the Limit of Liability Endorsement (GLUncapped) |
| 5. NAV-HCP-167 (04/15) | Claims Expenses in Addition to the Limit of Liability Endorsement (PLUncapped) |
| 6. NAV-HCP-180 (03/20) | Communicable Disease Exclusion Endorsement |
| 7. NAV-HCP-182 (11/20) | Limited Narcotics Exclusion Endorsement |
| 8. NAV-ML-002 (11/12) | OFAC Endorsement |
| 9. NAV-HCP-154 (01/14) | Damage to Rented Premises Endorsement |
| 10. NAV-HCP-122 (04/15) | Certified Acts of Terrorism Endorsement |
| 11. NAV-HCP-101 (01/14) | 25% Minimum Earned Premium Endorsement |
| 12. NAV-HCP-137 (01/14) | Sexual Acts Liability Endorsement |



| | |
|---|---|
| 13. NAV-HCP-100 (01/14) | Nuclear Energy Liability Exclusion (Broad Form) |
| 14. NAV-HCP-144 (01/14) | Stop Gap Employer's Liability Insurance Endorsement |
| 15. NAV-HCP-134 (01/14) | Employee Benefits Liability Coverage – Coverage D. |
| 16. NAV-HCP-107 (01/14) | Additional Insured Endorsement - General Liability |
| 17. MANUSCRIPT (12/20) | Additional Named Insured Endorsement |
| 18. NAV-HCP-117 (03/20) | Health Insurance Portability and Accountability Act (HIPPA) – Civil Monetary Penalty Endorsement |
| 19. NAV-HCP-118 (01/14) | Additional Insured Endorsement – Professional Liability |
| 20. NAV-HCP-159 (06/14) | Crisis Management Coverage Endorsement |
| 21. NAV-HCP-111 (01/14) | Amendment of Definitions and Exclusions – Electronic Data and Distribution of Material in Violation of Statutes |
| 22. NAV-HCP-112 (01/14) | Amendment of Definitions and Exclusions – Electronic Data and Distribution of Material in Violation of Statutes - GL |
| 23. NAV-HCP-160 (08/14) | Personal Property Coverage Endorsement |
| 19. NAV-ML-TERRD (01/15) | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |
| 20. G-3418-0-NAVG (09/19) | Producer Compensation Notice |

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.**

[Lisa Levin]
Secretary

[Douglas Elliot]
President



# NAVIGATORS SPECIALTY INSURANCE COMPANY

# Allied Healthcare Insurance Policy

## Allied Healthcare Professional Liability-Claims Made Coverage

## Allied Healthcare General Liability-Occurrence Coverage

THERE ARE BOTH OCCURRENCE COVERAGES AND CLAIMS MADE COVERAGES IN THIS POLICY.

## COMMON POLICY CONDITIONS

In consideration of the premium paid, the undertaking of the Named Insured to pay the applicable Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the **Application** attached hereto and made a part hereof and the underwriting information submitted on behalf of the **Insured**, and subject to the terms, conditions and limitations of this policy, the Company and the **Insured** agree as follows:

Various provisions in the Common Policy Conditions restrict coverage.

All Coverage Parts included in this policy are subject to the following conditions.


## DEFINITIONS

A.  **Employee** means any person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. **Employee** includes a **Leased Worker** and **Temporary Worker**.

B.  **Leased Worker** means a person leased to the Named Insured by a labor leasing firm, under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the Named Insured's business and which are at the **Insured's** direction. **Leased Worker** does not include a **Temporary Worker**.

C.  **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

D.  **Professional Services** means those services described in Item. 8. of the Declarations.

E.  **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent **Employee** on leave or to meet seasonal or short-term work load requirements.

F.  **Volunteer Worker** means any person who is not an **Employee** of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## EXCLUSIONS

This policy does not apply to:

A.    any **Claim** based upon, arising out of, or in any way involving Mold or Mold Event.

  1.    Mold means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

  2.    Mold Event means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of Mold.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the **Claim** is made in the United States of America, its territories or possessions or Puerto Rico.

## CLAIMS

A.    **Assistance and Cooperation of the Insured:**  The **Insured** shall cooperate with the Company and upon the Company's request, the **Insured** shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any **Claim**, all without cost to the Company. The **Insured** shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the **Insured** may have. The **Insured** shall not, except at his/her own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation or incur any expense without the written consent of the Company.

B.    **False or Fraudulent Claims:**  If any **Insured** gives notice of any **Claim** or potential **Claim** knowing it to be false or fraudulent, this insurance shall become void as to such **Insured** from the date such fraudulent **Claim** is proffered.

## OTHER CONDITIONS

A.    **Non Cumulation of Limits**:  If any **Claim** under this policy is also covered by one or more policies issued by this Company (or by another Navigators Company) to the Named Insured shown on the Declarations or to any entity or person who controls, is controlled by, or affiliated by common control with the Named Insured, then with respect to such **Claim**:

  1.    the Limit of Liability available for the policy for **Damages** and **Claims Expenses** will be equal to the percentage that this Policy's total Limit of Liability bears to the total combined Limits of Insurance available under all applicable policies; and

  2.    the total Limit of Liability available for such **Claim** shall not exceed the greatest Limit of Liability offered on any one applicable policy.

Payment of an amount equal to the greatest Limit of Liability offered on any one applicable policy shall extinguish this Company's liability on all of such policies for such **Claim**.

B. **Cancellation:** This policy may be cancelled by the Named Insured on behalf of all **Insureds** by mailing to the Company written notice as stated in Item 11. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Such notice shall be conclusive on all **Insureds**. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or by its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

C. **Representations:** By acceptance of this policy, the **Insureds** agree as follows:

1. that the information and statements contained in the **Application(s)** are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2. that the information and statements contained in the **Application(s)** are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

D. **Entire Agreement:** This policy, the Declarations, the **Application(s)** and any written endorsements attached hereto shall be deemed to be a single unitary contract.

E. **Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance.

F. **Assignment of Interest:** Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

G. **Action Against the Company:** No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this

policy, nor until the amount of the **Insured's** obligation to pay shall have been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the Claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the **Insured** to determine the **Insured's** liability. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

H.   **Authorization:**  By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all **Insureds** with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the **Insureds** agree that such person or organization shall act on their behalf.

I.   **Service of Suit:**  Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event suit is instituted against the Company relative to this contract, the Company will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon the Company through the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute.   The Company hereby designates the General Counsel of the Company, located at 400 Atlantic Street, 8th Floor, Stamford, CT 06901, as the person to whom the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing service of process.

## Allied Healthcare Professional Liability Coverage Part – Claims Made Coverage

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE ONLY.   PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the **Application** attached hereto and made a part hereof and the underwriting information submitted on behalf of the **Insured**, and subject to the terms, conditions and limitation of this policy, the Company and the **Insured** agree as follows:

## INSURING AGREEMENT

The Company shall pay on behalf of the **Insured**, subject to the Limit of Liability stated in Item 4. of the Declarations, all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the **Insured** shall become legally obligated to pay as **Damages** and **Claims**

**Expenses** as a result of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section **Claims** A., **Claim** Reporting Provision, for **Professional Personal Injury** by reason of any act, error or omission in **Professional Services** rendered or that should have been rendered by the **Insured** or by any person for whose acts, errors or omissions the **Insured** is legally responsible, and arising out of the conduct of the **Insured's Professional Services** provided:

A.    the act, error or omission happens during the **Policy Period** or on or after the Professional Liability Retroactive Date stated in Item 9. of the Declarations; and

B.    prior to the effective date of this policy no **Insured** had knowledge of or could have reasonably foreseen that such act, error or omission or any fact, circumstance, situation or incident might result in a **Claim**.


## LIMITS OF LIABILITY

A.    **Limit of Liability-Each Claim:**  The total liability of the Company for the combined total of **Damages** and **Claim Expenses** for each **Claim** first made during the **Policy Period** or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 4. of the Declarations as applicable to Each **Claim**.

B.    **Limit of Liability - Policy Aggregate:**  Subject to the above Limits of Liability A., the total liability of the Company shall not exceed the Policy Aggregate Limit of Liability as stated in Item 4. of the Declarations for all **Damages** and **Claim Expenses** arising out of all **Claims** first made during the **Policy Period** and the Extended Reporting Period, if exercised.

C.    **Limit of Liability - Reduction for Refusal to Settle:**  The Company shall not settle any **Claim** without the consent of the **Insured**. If, however, the **Insured** is a partnership, professional association,  professional corporation or limited liability company, the written consent of an **Insured** who was formerly but is no longer a member of the partnership, professional association or limited liability company or director, officer, stockholder or **Employee** of a professional corporation will not be required, provided the written consent of the corporate directors, officers, stockholders or **Employees** of a professional corporation, or their duly appointed representatives, has been obtained. If, however, the **Insured** shall refuse to consent to any settlement recommended by the Company and shall elect to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then the Company's liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled including **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the provisions of the above Limits of Liability A. and B.

D.    **Deductible:**  The Deductible amount stated in Item 6 of the Declarations shall be paid by the Named Insured and shall be applicable to each **Claim** and shall include **Damages** and **Claim Expenses**, whether or not **Damages** payments are made.

The determination of the Company as to the reasonableness of the **Claim Expenses** shall be conclusive on the Named Insured.

E.    **Multiple Insureds, Claims and Claimants:**  The inclusion herein of more than one **Insured** in any **Claim** or suit or the making of **Claims** or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one **Claim** arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single **Claim**. All such **Claims**, whenever made, shall be treated as a single **Claim**. Such single **Claim**, whenever made, shall be deemed to be first made on the date on which the earliest **Claim** arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company

pursuant to Section **Claims** B., Discovery Clause, on the date within the **Policy Period** on which such notice of potential **Claim** is first received by the Company.

F.    **Multiple Coverage Parts**:  If any **Claim** is brought under this Coverage Part of this policy, it cannot also be brought under any other Coverage Part of this policy.


## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any **Claim** to which coverage under this policy applies. **Claim Expenses** incurred in defending and investigating a **Claim** shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 4. of the Declarations. Such **Claim Expenses** shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any **Damages** or to defend or to continue to defend any **Claim** or to pay **Claim Expenses** for **Claims** after the applicable Limit or Limits of Liability stated in Item 4. of the Declarations have been exhausted.


## DEFINITIONS

A.    **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Named Insured; provided, however, **Administrative Duties** shall not include:

1.    rendering or failure to render to a patient, person or resident of a healthcare facility **Professional Services** by a medical director which results in **Professional Personal Injury**; or

2.    rendering or failure to render patient specific medical direction via telecommunications to other healthcare professionals.

B.    **Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's **Products**, goods or operations or other defamatory or disparaging material, occurring in the course of the Named **Insured's Advertisement**.

C.    **Application** means all **Application(s)**, attachments, additional materials and information submitted for this Policy and for any Policy in an uninterrupted series of policies issued by the Company or any Affiliate of the Company of which this Policy is a renewal or replacement. All such **Application**, attachments, materials and information are deemed attached to and incorporated into this Policy.

D.    **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

E.    **Claim** means a demand arising out of an act, error or omission in the performance of **Professional Services** received by the **Insured** for monetary damages or services and shall include the service of suit or institution of arbitration proceedings against the **Insured**.

F.    **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the **Insured** with the prior written consent of the Company in the defense of that portion of any **Claim** for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, **Claim Expenses** shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with **Employees** or officials of the Named **Insured** or

**Employees** or officials of the Company; (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company; or (3) any fees, costs or expenses incurred with respect to any criminal proceedings or actions against any **Insured**.

G.   **Damages** means the monetary portion of any judgment, award or settlement, and pre and post judgment interest; provided, however, **Damages** shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorney's fees or other penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

H.   **Employee** means any person while in the regular service of the Named **Insured** in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. **Employee** includes a **Leased Worker** and **Temporary Worker**.

I.   The **Insured**, either in the singular or plural, means:

1.   the Named Insured specified in Item 1. of the Declarations;

2.   any current or former principal, partner, officer, director, **Employee**, **Volunteer Worker** or of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such; provided, however, this insurance shall not apply to any **Claim** made against any **Insured** who is a physician, surgeon or dentist arising out of the rendering of or failure to render **Professional Services** in his/her capacity as a physician, surgeon or dentist;

3.   if the Named Insured specified in Item 1. of the Declarations is a limited liability company, any current or former manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of the limited liability company and any current or former member thereof, but only with respect to the conduct of the business of the limited liability company;

4.   any medical director solely while acting on behalf of the Named Insured and solely within the scope of his/her **Administrative Duties** as such; provided, however, this insurance shall not apply to any **Claim** made against any medical director who is a physician, surgeon or dentist arising out of the rendering of or failure to render **Professional Services** in his/her capacity as a physician, surgeon or dentist;

5.   any student enrolled in a training program in connection with the Named Insured's **Professional Services** solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

6.   the heirs, executors, administrators, assigns and legal representatives of each **Insured** in the event of death, incapacity or bankruptcy of such **Insured**, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the **Insured's** estate.

J.   **Leased Worker** means a person leased to the Named Insured by a labor leasing firm, under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the Named Insured's business and which are at the **Insured's** direction. **Leased Worker** does not include a **Temporary Worker**.

K.   **Personal Injury** means injury arising out of one or more of the following offenses:

1.   false arrest, detention or imprisonment or malicious prosecution;

2. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3. oral or written publication of material that violates a person's right of privacy.

L.  **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

M.  **Products** means goods or **Products**, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof (other than a vehicle); provided, however, that **Named Insured's Products** shall not include a vending machine or any other property rented to or located for use of others but not sold.

N.  **Professional Personal Injury** means:

1. any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, client or resident of a healthcare facility receiving **Professional Services**;

2. false arrest, detention or imprisonment, or malicious prosecution of a patient, client or resident  receiving **Professional Services** except when inflicted by, at the direction of, or with the consent or acquiescence of the **Insured** who has predetermined to commit such act, or allowed such act to have been committed, without legal justification; or

3. the publication or utterance of a libel or slander or a publication or an utterance in violation of a patient's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the **Insured** who has predetermined to commit such act, or allowed such act to have been committed, without legal justification.

O.  **Professional Services** means those services described in Item 8. of the Declarations.

P.  **Property Damage** means:

1. physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2. loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an **Occurrence**.

Q.  **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent **Employee** on leave or to meet seasonal or short-term work load requirements.

R.  **Volunteer Worker** means any person who is not an **Employee** of the Named Insured and who donates his/ her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## EXCLUSIONS

This policy does not apply to:

A.  any **Claim** based upon or arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or with the knowledge of or direction of an **Insured**.  The Company will provide an **Insured** with a

defense of such **Claim** unless and until such dishonest, fraudulent, criminal, malicious or knowingly wrongful act, error or omission has been determined by final adjudication, finding of fact or admission by an **Insured**;

B.  liability arising out of the **Insured's** activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or **Employee** of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, business enterprise, or any governmental body, sub-division or agency not named as an **Insured** under this policy unless such activities are disclosed in the **Application** and listed at Item 8. in the Declarations;

C.  any **Claim** based upon or arising out of any obligation of the **Insured** under any workers' compensation, employers liability, pension benefits, unemployment compensation or disability benefits law or under any similar law;

D.  **Professional Personal Injury** to, or sickness, disease or death of any **Employee** of the **Insured**;

E.  any **Claim** based upon or arising out of any liability assumed by the **Insured** in a contract or agreement; provided, however, this exclusion shall not apply to liability an **Insured** would have in the absence of the contract or agreement;

F.  any **Claim** based upon or arising out of any unlawful discrimination by any **Insured**;

G.  any **Claim** arising out of **Professional Services** caused by any **Insured** during the performance of a criminal act or caused by any **Insured** while under the influence of intoxicants or narcotics;

H.  any **Claim** arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft, motor vehicle, **Automobile**, trailer or aircraft. However, this does not apply to loading and unloading of a patient;

I.  any **Claim** based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature; provided, however, the Company shall defend the Named Insured for such a **Claim** for the strictly vicarious liability of the Named Insured, unless a manager, supervisor, officer, director, trustee or partner of the Named Insured:

    1.  knew or should have known about the sexual act allegedly committed but failed to prevent or stop it; or

    2.  knew or should have known that the person who allegedly committed the sexual act had a prior history of such sexual misconduct act;

    The Company shall not pay **Damages** on behalf of the Named Insured for such a **Claim**.

J.  any **Claim** based upon or arising out of General Liability including

    1.  **Advertising Injury**

    2.  **Property Damage**

    3.  **Products** Liability

    4.  **Bodily Injury**, other than for **Professional Personal Injury** for a Patient

    5.  **Personal Injury**, other than for a Patient.

K.  any **Claim** made against an **Insured**:

1. by any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an **Insured** or parent company or any subsidiary, division or affiliated organization; or

2. by or on behalf of any **Insured** under this policy; provided, however, this exclusion shall not apply to any **Claim** made against any **Insured** arising out of the rendering of or failure to render **Professional Services** by the **Insured** or by any person for whose acts, errors or omissions the **Insured** is legally responsible, if such **Insured** is a patient or client of the **Insured**;

L. any **Claim** based upon or arising out of wrongful termination or other employment related practices;

M. any **Claim** based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of **Advertisement**;

N. any **Claim** based upon or arising out of the dispensing of or the use of any drug or device that was approved then subsequently withdrawn by the Food and Drug Administration (FDA), at the time such drug or device was used or dispensed;

O. any **Claim** based upon or arising out of any actual or alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law; or

P. any **Claim** based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.

Q. any **Claim** based upon or arising out of, or in any way involving any actual or alleged gathering , use,  handling or dissemination of "Personal Information" in any form, including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or any subsequent related local, state or federal legislation. Personal Information means any numerical, letter, symbol, image, sound, genetic or biological characteristic, or any combination thereof, unique to an individual or group of individuals and/or assigned to an individual or group of individuals by an person, government or non-governmental entity.

R. any **Claim** against any **Insured** who, during the performance **Professional Services** fails to maintain proper licensure status or who performs **Professional Services** while his/her professional license or registration to practice was suspended, revoked or otherwise not active.

S. any **Claim** based upon or arising out of, or in any way involving any actual or alleged:

1. threatened discharge, dispersal, seepage, migration, release or escape of any Pollutants; or

2. request, demand order, statutory or regulatory requirement that an **Insured** abate, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of Pollutants.

T. any **Claim** made against any **Insured** who is a physician, surgeon or dentist arising out of the rendering of or failure to render **Professional Services** in his/her capacity as a physician, surgeon or dentist;

U.   any **Claim** brought by or on behalf of any individual who is receiving, or has received **Professional Services** from an **Insured** against any other individual who is receiving, or has received, **Professional Services** from an **Insured**.

V.   any **Claim** based upon or arising out of any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship, or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

W.   any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an **Insured** by the United States Department of Health & Human Services (HHS) or by an utilization or quality review organization under contract with HHS; provided, however, this exclusion shall not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act;

X.   any **Claim** based upon or arising out of a billing dispute brought by or on behalf of any client or patient, by or on behalf of any government or private health insurer, or any other entity;

Y.   any **Claim** based upon or arising out of acts that occurred prior to the retroactive date or after the expiration of the policy, any **Claim** made after the expiration of the policy or reported after the 120 day window, any **Claim** for which there was prior knowledge, or any **Claim** that was reported to, or covered under, another program of insurance prior to this policy;

Z.   any **Claim** based upon or arising out of the destruction of medical records;

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the **Claim** is made in the United States of America, its territories or possessions or Puerto Rico.

## CLAIMS

A.   **Claim Reporting Provision:**  The **Insured** shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable but no later than 120 days after expiration of the **Policy Period** of any **Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised.

In the event suit is brought against the **Insured**, the **Insured** shall immediately forward to Professional Liability **Claim**s Department, NAVIGATORS GROUP, INC., One Penn Plaza, New York, NY 10119, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.   **Discovery Clause:**  If during the **Policy Period**, the **Insured** first becomes aware of a specific act, error or omission in **Professional Services** which may result in a **Claim** within the scope of coverage of this policy, then the **Insured** may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the **Policy Period**, then any **Claim** subsequently made against the **Insured** arising out of such act, error or omission in **Professional Services** shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.  the description of the specific act, error or omission;

2.  the date on which such act, error or omission took place;

3.  the injury or damage which has or may result from such act, error or omission;

4.  the identity of any injured persons; and

5.  the circumstances by which the **Insured** first became aware of such act, error or omission.

C.  **Assistance and Cooperation of the Insured:** The **Insured** shall cooperate with the Company and upon the Company's request, the **Insured** shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any **Claim**, all without cost to the Company. The **Insured** shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the **Insured** may have. The **Insured** shall not, except at his/her own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation or incur any expense without the written consent of the Company.

D.  **False or Fraudulent Claims:** If any **Insured** gives notice of any **Claim** or potential **Claim** knowing it to be false or fraudulent, this insurance shall become void as to such **Insured** from the date such fraudulent **Claim** is proffered.

## EXTENDED REPORTING PERIOD

A.  If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in Item 10. of the Declarations of the annual deposit premium for the policy, subject to adjustment as per Section Other Conditions I., Premium and Audit, but in no event less than the percentage set forth in Item 10. of the Declarations of the annual minimum premium for the policy, to extend the coverage granted under this policy, to **Claims** first made against the **Insured** during the period of months stated in Item 10. of the Declarations; as elected by the Named Insured, and reported to the Company pursuant to Section **Claims** A., **Claim** Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in **Professional Services** rendered on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy. This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar **Claims** made insurance coverage on which the Professional Liability Retroactive Date is the same as or earlier than that stated in the Item 9. of the Declarations, the succeeding insurance shall be deemed to

be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any **Insured's** license or right to practice his/her profession is revoked, suspended or surrendered.

B.    As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:  (1) all Deductibles when due; (2) all premiums due for the **Policy Period**; and (3) all premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in Item 11. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of election and payment of additional premium are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.    The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

D.    In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

E.    The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## OTHER CONDITIONS

A.    **Cancellation:**  This policy may be cancelled by the Named Insured on behalf of all **Insureds** by mailing to the Company written notice as stated in Item 11. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Such notice shall be conclusive on all **Insureds**. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the

Company or by its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B.   **Representations:**  By acceptance of this policy, the **Insureds** agree as follows:

1.   that the information and statements contained in the **Application(s)** are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2.   that the information and statements contained in the **Application(s)** are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

C.   **Entire Agreement:**  This policy, the Declarations, the **Application(s)** and any written endorsements attached hereto shall be deemed to be a single unitary contract.

D.   **Other Insurance:**  This insurance shall be in excess of and shall not contribute if any other valid and collectible insurance is available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

E.   **Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance.

F.   **Assignment of Interest:**  Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

G.   **Subrogation:**  In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all **Insureds** to the extent of such payment. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after the **Claim** to prejudice such rights.

The Company shall not exercise any such rights against any person, firms or corporations included in the definition of **Insured**. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **Claim** brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such **Insured**.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any **Damages** and **Claims Expenses** by the **Insured** in excess of any Deductible(s); third, to any **Damages** and **Claims Expenses** by any excess carrier on behalf of the **Insured**; fourth, to any **Damages** and  shall not apply to any **Claim** made against any medical director who is a physician, surgeon or dentist arising out of the rendering of or failure to render **Professional Services** in his/her capacity as a physician, surgeon or dentist; **Claims Expenses** by any primary carrier on behalf of the **Insured**; and, last, to repayment of the **Insured's** Deductible.

H.  **Inspection:**  The Company shall be permitted but not obligated to inspect the **Insured's** operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

I.  **Action Against the Company:**  No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the Claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the **Insured** to determine the **Insured's** liability. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

J.  **Authorization:**  By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all **Insureds** with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the **Insureds** agree that such person or organization shall act on their behalf.

K.  **Service of Suit:**  Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event suit is instituted against the Company relative to this contract, the Company will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon the Company through the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute.  The Company hereby designates the General Counsel of the Company, located at 400 Atlantic Street, 8th Floor, Stamford, CT 06901, as the person to whom the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing service of process.

# Allied Healthcare General Liability (Including Products and Completed Operations Liability) Coverage Part – Occurrence Coverage

THIS COVERAGE PART PROVIDES OCCURRENCE COVERAGE ONLY. PLEASE READ IT CAREFULLY.

This Coverage Part does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

## INSURING AGREEMENTS

A.   **Coverage A. - Bodily Injury and Property Damage Liability:**  The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the **Insured** shall become legally obligated to pay as **Damages** and related **Claims Expenses** as a result of **Claims** made against the **Insured** and reported to the Company pursuant to Section Claim Reporting Provision, for **Bodily Injury** or **Property Damage** to which this Coverage Part applies caused by an **Occurrence**, provided:

1.   the entirety of such **Bodily Injury** or **Property Damage** and **Occurrence** happens during the **Policy Period**; and

2.   such **Bodily Injury** or **Property Damage** arises out of only those **Products**, goods, operations or premises specified in Item 8. of the Declarations.

B.   **Coverage B. - Personal Injury and Advertising Injury Liability:**  The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the **Insured** shall become legally obligated to pay as **Damages** and related **Claims Expenses** as a result of **Claims** made against the **Insured** and reported to the Company pursuant to Section **Claim** Reporting Provision, for **Personal Injury** or **Advertising Injury** to which this Coverage Part applies caused by an offense, provided:

1.   the entirety of such **Personal Injury** or **Advertising Injury** and offense happens during the **Policy Period**; and

2.   such **Personal Injury** or **Advertising Injury** arises out of only those **Products**, goods, operations or premises specified in Item 8. of the Declarations.

C.   **Coverage C. – Medical Payments**

The Company will pay medical expenses for **Bodily Injury** caused by an accident:

1.   On premises the Named Insured owns or rents;

2.   On ways next to premises the Named Insured owns or rents; or

3.   Because of the Named Insured's operations;

provided that:

(i)   The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the **Policy Period**;

(ii)   The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

(iii)   The injured person submits to examination, at the Company's expense, by physicians of the Company's choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

(1)   First aid administered at the time of an accident;

(2)   Necessary medical, surgical, x-ray and dental services, including prosthetic devices, and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## DEFINITIONS

A.  **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the **Products**, goods or operations of the Named Insured for the purpose of promoting the sale or use of such **Products**, goods or operations; provided, however, only that part of a website that is about the **Products**, goods or operations of the Named Insured for the purposes of promoting such **Products**, goods or operations is considered an **Advertisement**.

B.  **Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's **Products**, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's **Advertisement**.

C.  **Aircraft Products** means any aircraft whether or not heavier than air (including spacecraft and missiles) and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of any aircraft product.

D.  **Automobile** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include **Mobile Equipment**.

E.  **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

F.  **Claim** means a demand for money or services received by the **Insured**, which intends to hold the **Insured** responsible for: (1) a **Bodily Injury**; (2) a **Property Damage**; (3) an **Advertising Injury**; or (4) a **Personal Injury**; involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the **Insured**.

G.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the **Insured** with the prior written consent of the Company in the defense of that portion of any **Claim** for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that **Claim Expenses** shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with **Employees** or officials of the Named Insured or **Employees** or officials of the Company; (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company; or (3) any fees, costs or expenses incurred with respect to any criminal proceedings or actions against any **Insured**.

Solely for the purposes of liability assumed in an **Insured Contract**, **Claim Expenses** incurred by or for a party other than an **Insured** are deemed to be **Damages** because of **Bodily Injury** or **Property Damage**; provided, however, that:

1.  liability to such party for, or the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

2.  such **Claim Expenses** are for the defense of that party against a civil or alternative dispute resolution proceeding in which **Damages** to which this insurance applies are alleged.

H.  **Completed Operations Hazard** means **Bodily Injury** and **Property Damage** arising out of only those operations stated in Item 8. of the Declarations, after such operations have been completed or abandoned by the **Insured** and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those **Products**, goods and operations stated in Item 8. of the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1.  when all operations to be performed by or on behalf of the **Insured** under a contract with the **Insured** have been completed;

2.  when all operations to be performed by or on behalf of the **Insured** at the site of the operations have been completed; or

3.  when the portion of the work out of which the **Bodily Injury** or **Property Damage** arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The **Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

(i)  operations in connection with the transportation of property, unless the **Bodily Injury** or **Property Damage** arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

(ii)  the existence of tools, uninstalled equipment or abandoned or unused materials.

I.  **Damages** means the monetary portion of any judgment, award or settlement; provided, however, **Damages** shall not include: (1) punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorneys' fees of a party other than an **Insured** or other penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return, restitution or payment of any fees, profits or charges for services rendered.

J.  **Employee** means any person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. **Employee** includes a **Leased Worker** and **Temporary Worker**.

K.  **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any **Aircraft Products**.

L.  The unqualified word "**Insured**", either in the singular or plural, means:

1.  the Named Insured specified in Item 1. of the Declarations;

2.  if the Named Insured specified in Item 1. the Declarations is an individual, the person so named , but only with respect to his/her conduct of business as a sole proprietor;

3.  if the Named Insured specified in Item 1. the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof, but only with respect to the conduct of the partnership or joint venture business;

4.  if the Named Insured specified in Item 1. the Declarations is a limited liability company, the limited liability company so named, any manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

5.  if the Named Insured specified in Item 1. the Declarations is other than an individual, partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

6.  any person (other than an **Employee** of the Named Insured) or organization while acting as real estate manager for the Named Insured;

7.  any **Employee** of the Named Insured, but only while acting within the scope of their duties;

8.  with respect to the operation, for the purpose of locomotion upon a public highway, of **Mobile Equipment** registered in the name of the Named Insured under any motor vehicle registration law:

    a.  an **Employee** of the Named Insured while operating any such equipment in the course of his/her employment by the Named Insured; or

    b.  any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

    provided, however, that no person or organization shall be an **Insured** under this paragraph with respect to:

    (i)   **Bodily Injury** to any co-**Employee** of such person operating any such equipment; or

    (ii)  **Property Damage** to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph 2. hereinabove;

9.  any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

    provided, however that:

    a.  coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the **Policy Period**, whichever is earlier;

b.  Coverage A. does not apply to **Bodily Injury** or **Property Damage** that occurred before the Named Insured acquired or formed the organization; and

c.  Coverage B. does not apply to **Personal Injury** or **Advertising Injury** arising out of an offense committed before the Named Insured acquired or formed the organization.

10. any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of his/her duties as such;

11. any student enrolled in a training program in connection with the Named Insured's **Professional Services** solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

12. any **Volunteer Worker** other than a healthcare provider of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such and at the direction of the Named Insured;

13. the heirs, executors, administrators, assigns and legal representatives of each **Insured** in the event of death, incapacity or bankruptcy of such **Insured**, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the **Insured**'s estate.

14. any member of the Named Insured's boards or committees, solely for conduct arising out of his/her duties as board or committee members and any person who executes orders from the Named Insured's  boards or committees solely while in the course and scope of executing such orders.

M.  **Insured Contract** means:

1.  a contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the **Insured** or temporarily occupied by the **Insured** with the permission of the owner shall not be an **Insured Contract**;

2.  any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

3.  an obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

4.  a sidetrack agreement;

5.  an elevator maintenance agreement; or

6.  that part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third party; provided, however, **Insured Contract** shall not include that part of any contract or agreement:

(i)  that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(ii) that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

      (b) supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

    (iii) under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render **Professional Services**, including those listed in subparagraph (ii) hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

N.   **Leased Worker** means a person leased to the Named Insured by a labor leasing firm, under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the Named Insured's business and which are at the **Insured's** direction. **Leased Worker** does not include a **Temporary Worker**.

O.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2.  vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

   3.  vehicles that travel on crawler treads;

   4.  vehicles, whether self-propelled or not, on which are permanently mounted:

      (i)  power cranes, shovels, loaders, diggers, or drills; or

      (ii)  road construction or resurfacing equipment such as graders, scrapers or rollers;

   5.  vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (i)  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (ii)  cherry pickers and similar devices used to raise or lower workers;

   6.  vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Automobiles**:

      (i)  equipment designed primarily for:

         (a)  snow removal;

         (b)  road maintenance, but not construction or resurfacing; or

         (c)  street cleaning;

      (ii)  cherry pickers and similar devices mounted on **Automobile** or truck chassis and used to raise or lower workers; and

      (iii)  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

P.   **Named Insured's Products** means goods or **Products**, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof (other than a vehicle); provided, however, that **Named Insured's Products** shall not include a vending machine or any other property rented to or located for use of others but not sold.

Q.   **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

R.   **Personal Injury** means injury arising out of one or more of the following offenses:

1.   false arrest, detention or imprisonment or malicious prosecution;

2.   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3.   oral or written publication of material that violates a person's right of privacy.

S.   **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

T.   **Products Hazard** means **Bodily Injury** or **Property Damage** arising out of only those **Products** or goods stated in Item 8. of the Declarations which are the **Named Insured's Products**, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those **Products** or goods stated in Item 8. of the Declarations and the providing or failure to provide instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such **Products** has been relinquished to others.

U.   **Professional Services** means those services described in Item 8. of the Declarations.

V.   **Property Damage** means:

1.   physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2.   loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an **Occurrence**.

W.   **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent **Employee** on leave or to meet seasonal or short-term work load requirements.

X.   **Volunteer Worker** means any person who is not an **Employee** of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## EXCLUSIONS

A.   With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to:

1.   any **Claim** based upon or arising out of:

(i) the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

(a) the **Products Hazard** or **Completed Operations Hazard**;

(b) damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any **Insured**;

(ii) **Bodily Injury** or **Property Damage** arising out the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

(a) at or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

(b) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom the **Insured** may be legally responsible; or

(iii) any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for **Damages** because of **Property Damage** that the **Insured** would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

Pollutants means any solid, liquid, gaseous or thermal irritants or contaminants including, smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

2. any **Claim** based upon or arising out of the rendering of or failure to render **Professional Services** by the **Insured** or by any person or organization for whose acts, errors or omissions the **Insured** is legally responsible;

3. any **Claim** based upon or arising out of the **Insured's** activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

4. any **Claim** based upon or arising out of any unlawful discrimination by any **Insured**; or

5. any **Claim** based upon or arising out of wrongful termination or other employment related practices;

6. any **Employee Claim** arising from:

A. **Bodily Injury**, **Personal Injury** or **Advertising Injury**:

(i) to the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-**Employee** while in the course of his/her employment or performing duties related to the conduct of the Named Insured's business;

(ii) to the spouse, child, parent, brother or sister of that co-**Employee** as a consequence of subparagraph 1.(i) hereinabove;

(iii) for which there is any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

(iv) arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

B.  **Property Damage** to property:

(i)  owned, occupied or used by; or

(ii) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any **Volunteer Worker** or **Employee** of the Named Insured or any partner or member; or

7.  any **Claim**, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

8.  any **Claim** brought against the Insured or any person or persons for whose acts or omissions the Insured is legally responsible, arising out of the actual, alleged or threatened discharge, dispersal, release or escape of any solid, liquid, gas or thermal irritant or contaminant including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste materials which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage.

9.  any **Claim** based upon or arising out of silica, including but not limited to:

a.  inhaling, ingesting or physical exposure to silica directly or through any goods, products, structures, real estate or land containing silica;

b.  the use or presence of silica in any process or operation of any type, including by not limited to construction, manufacturing, sandblasting, cleaning, drilling, farming or mining;

c.  the use or presence of silica in any goods, products, structures, real estate or land, or any component part of any good, product, structures, real estate or land containing silica;

d.  the manufacture, sale, transportation, handling, storage, or disposal of silica or any goods, products, structures, real estate, or land containing silica;

e.  disease actually or allegedly caused by, contributed to or aggravated by silica, including but not limited to silicosis, chronic silicosis, accelerated silicosis, acute silicosis, conglomerate silicosis, any auto-immune disorder, tuberculosis, silicoproteinosis, cancer, scleroderma, emphysema, pneumoconiosis, pulmonary fibrosis, progressive massive fibrosis, any lung disease or any other ailment actually or allegedly caused by, contributed to or aggravated by silica;

f.  any costs of medical or other testing, monitoring or diagnosis arising from or related to any actual, alleged, threatened or feared disease or injury, including any emotional or mental distress, arising in whole or in part, directly or indirectly, out of silica; or

g.  any cost of investigations, feasibility studies, cleaning, removal or remediation of the actual or alleged presence of silica in or on any goods, products, structures, real estate or land.

B.  With respect to Coverage A., this Coverage Part does not apply to:

1. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**; provided, however, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property;

2. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** for which the **Insured** is obligated to pay **Damages** because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for **Damages**:

   (i) that the **Insured** would have in the absence of the contract or agreement; or

   (ii) assumed in a contract or agreement that is an **Insured Contract**, provided, the **Bodily Injury** and **Property Damage** occurs subsequent to the execution of the **Insured Contract**;

3. any **Claim** based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   (i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   (ii) a defect, deficiency, inadequacy or dangerous condition in the **Products**, goods or operations of the Named Insured;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **Named Insured's Products** or work performed by or on behalf of the Named Insured after such **Products** or work have been put to use by any person or organization other than an **Insured**;

4. any **Claim** based upon or arising out of **Property Damage** to the **Named Insured's Products** arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

5. any **Claim** for **Damages** for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the **Named Insured's Products** or work completed by or for the Named Insured or of any property of which such **Products** or work form a part, if such **Products**, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   (i) any **Automobile**, aircraft or watercraft owned or operated by or rented or loaned to any **Insured**; or

   (ii) any other **Automobile**, aircraft or watercraft operated by any person in the course of his/her employment or activities on behalf of the Named Insured;

   provided, however, this exclusion shall not apply to:

   (a) the parking of an **Automobile** on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such **Automobile** is not owned by or rented or loaned to any **Insured**;

(b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

(c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** arising out of:

(i) the ownership, maintenance, operation, use, loading or unloading of any **Mobile Equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

(ii) the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** arising out of the transportation of **Mobile Equipment** by an **Automobile** owned or operated by or rented or loaned to any **Insured**;

9. any **Claim** based upon or arising out of **Property Damage** to:

(i) property owned, occupied or rented to the **Insured**;

(ii) property loaned to the **Insured**;

(iii) personal property in the care, custody or control of the **Insured**;

(iv) that particular part of any property,

(a) upon which operations are being performed by or on behalf of the **Insured** if the **Property Damage** arises out of those operations; or

(b) the restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the **Insured**; provided, however, this subparagraph shall not apply with respect to **Property Damage** included in the **Completed Operations Hazard** or the **Products Hazard**;

(v) premises that the Named Insured sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the **Completed Operations Hazard** and were never occupied, rented or held for rental by the Named Insured; or

(vi) to work performed by the **Insured** arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the **Completed Operations Hazard**;

provided, however, Items (ii), (iii), and (iv) of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. any **Claim** based upon or arising out of any obligation of the **Insured** under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. any **Claim** based upon or arising out of **Bodily Injury** to any **Employee** of the **Insured** arising out of and in the course of employment by the **Insured** or performing duties

related to conduct of the **Insured's** business or any such **Claim** brought by or on behalf of the spouse, child, parent, brother, sister or partner of the **Employee**;

this exclusion shall apply:

(i)    whether the **Insured** may be liable as an employer or in any other capacity; and

(ii)   to any obligation to share **Damages** with or repay someone else who must pay **Damages** because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an **Insured Contract**;

12. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** for which the **Insured** may be held liable because of:

(i)    causing or contributing to the intoxication of any person;

(ii)   the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(iii)  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

provided, however, this exclusion shall apply only if the Named Insured:

(a)    manufactures or distributes alcoholic beverages;

(b)    serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

(c)    serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. any **Claim** based upon or arising out of **Bodily Injury** or **Property Damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing with respect to liability assumed by the **Insured** under an **Insured Contract**;

14. any **Claim** based upon or arising out of **Aircraft Products** including consequential loss of use thereof resulting from **Grounding**;

15. any **Claim** based upon or arising out of any **Products** or goods manufactured, sold, handled, or distributed or work completed by the **Insured** or by others operating under the direction or control of the **Insured** in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

16. any **Claim** for **Bodily Injury** arising out of **Personal Injury** or **Advertising Injury**.

17. any **Claim** based upon or arising out of **Bodily Injury** sustained by any patient, person or resident of a healthcare facility receiving **Professional Services** of any **Insured** or any such **Claim** brought by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a healthcare facility.

Exclusions 3. through 16. shall not apply to damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability - Damage to Premises.

C.    With respect to Coverage B., this Coverage Part does not apply to:

1. any **Claim** based upon or arising out of **Personal Injury** or **Advertising Injury** caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury**;

2. any **Claim** based upon or arising out of **Personal Injury** or **Advertising Injury** arising out of the oral or written publication of material, if done by or at the direction of the **Insured** with the knowledge of its falsity;

3. **Personal Injury** or Adverting Injury arising out of oral or written publication of material whose first publication took place before the beginning of the **Policy Period**.

4. any **Claim** based upon or arising out of **Personal Injury** or **Advertising Injury** arising out of any criminal act committed by or at the direction of the **Insured**;

5. any **Claim** based upon or arising out of **Advertising Injury** arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6. any **Claim** based upon or arising out of any liability assumed by the **Insured** in a contract or agreement; provided, however, this exclusion shall not apply to liability an **Insured** would have in the absence of the contract or agreement;

7. any **Claim** based upon or arising out of **Personal Injury** or **Advertising Injury** arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

8. any **Claim** based upon or arising out of **Personal Injury** or **Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control;

9. any **Advertising Injury** committed by any **Insured** whose business is:

    (i) advertising, broadcasting, publishing, or telecasting;

    (ii) designing or determining content for websites for others; or

    (iii) an Internet access, content search or service provider;

10. any **Claim** based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's **Advertisement**;

11. any **Claim** based upon or arising out of the failure of **Products**, goods or services to conform with any statement of quality or performance made in the Named Insured's **Advertisement**; or

12. any **Claim** based upon or arising out of the refusal to employ, terminate employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges; or

13. any **Claim** against the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company.

D. With respect Coverage C., the Company will not pay any expenses for **Bodily Injury**:

1. to any **Insured**;

2. to a person hired to do work for or on behalf of the **Insured** or a tenant of the Named Insured

3. to a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. to a person, whether or not an **Employee** of an **Insured**, if benefits for the **Bodily Injury** are payable or must be provided under any workers' compensation or disability benefits law or under any similar law;

5. to a person injured while taking part in athletics;

6. included in the **Products Hazard** or the **Completed Operations Hazard**;

7. excluded under Coverage A.;

8. to any patient, person or resident of a healthcare facility receiving **Professional Services**; or

9. due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## LIMITS OF LIABILITY

A. **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of **Damages** and **Claim Expenses** for all **Claims** because of all **Bodily Injury** or **Property Damage** sustained by one or more persons or entities as the result of any one **Occurrence** shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each **Occurrence**.

B. **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for the combined total of **Damages** and **Claim Expenses** for all **Claims**, including those subject to the above provision regarding the Coverage A - Limit of Liability – Each **Occurrence**, because of **Property Damage** to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Damage to Premises – Any One Premises.

C. **Coverage B. - Limit of Liability-Each Person or Organization:**  The total liability of the Company for the combined total of **Damages** and **Claim Expenses** for all **Claims** under Coverage B. because of all **Personal Injury** and all **Advertising Injury** sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 5.B. of the Declarations as applicable to Each Person or Organization.

D. **Coverage C.– Medical Payments:  Limit of Liability–Each Injured Person:**  The total liability of the Company for medical expenses under Coverage C. because of **Bodily Injury** sustained by any one person shall not exceed the Limit of Liability stated in Item 5.C of the Declarations as applicable to Each Injured Person.

E. **Limit of Liability – Aggregate:**  Subject to the above Limits of Liability A., B., and C., the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 5.D. of the Declarations for all **Damages** and **Claim Expenses** for Coverage A. and B. and all medical expenses for Coverage C.

F. **Deductible:**  The applicable Deductible amount stated in Item 6. of the Declarations shall be paid by the Named Insured and shall be applicable to each **Occurrence** and to each person or organization and shall include **Damages** and **Claim Expenses**, whether or not **Damages** payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each **Occurrence** or each person or organization shall not exceed the applicable Deductible amount stated in Item 6. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the applicable Deductible amount shall be deemed to be applied first to the **Damages**.

The determination of the Company as to the reasonableness of the **Claim Expenses** shall be conclusive on the Named Insured.

G.   **Multiple Insureds, Claims, Occurrences, Offenses and Claimants:**   The inclusion herein of more than one **Insured** in any **Claim** or suit or the making of **Claims** or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Items 5.A., 5.B. and 5.D. of the Declarations.

More than one **Bodily Injury** and/or **Property Damage**, including any continuation, change or resumption of such **Bodily Injury** or **Property Damage**, arising out of a single **Occurrence** shall be considered a single **Occurrence**. All such **Bodily Injury** or **Property Damage** shall be deemed to take place on the date on which the earliest **Bodily Injury** or **Property Damage** happens.

All **Damages** and **Claims Expenses** sustained because of one or more **Personal Injury**, **Advertising Injury** and/or offense by any one person or organization shall be subject to the Limit of Liability stated in Item 5.B. of the Declarations as applicable to Each Person or Organization. All such **Personal Injury** or **Advertising Injury** shall be deemed to take place on the date on which the earliest **Personal Injury** or **Advertising Injury** happens.

H.   **Multiple Coverage Parts**:  If any **Claim** is brought under one Coverage Part of this policy, it cannot also be brought under any other Coverage Part of this policy.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any **Claim** to which Coverage A. and/or B. under this Coverage Part applies. The Company may make such investigation and settlement of any **Claim** as it deems expedient. **Claim Expenses** incurred in defending and investigating a **Claim** shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Items 5.A. and 5.B. of the Declarations. Such **Claim Expenses** shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any **Damages** or to defend or to continue to defend any **Claim** or to pay **Claim Expenses** for **Claims** after the applicable Limit or Limits of Liability stated in Items 5.A., 5.B., and 5.D.. of the Declarations have been exhausted.

## CLAIM REPORTING PROVISION

The **Insured** shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable but no later than 120 days after expiration of the **Policy Period** of any **Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised.

In the event suit is brought against the **Insured**, the **Insured** shall immediately forward to Professional Liability **Claims** Department, NAVIGATORS GROUP, INC., One Penn Plaza, New York, NY 10119, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

## OTHER CONDITIONS

A.  **Prevention of Loss:**  In the event of an **Occurrence** or an offense involving the **Products**, goods, operations or premises covered by this Coverage Part, the **Insured** shall promptly, at his/her expense, take all reasonable steps to prevent other **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** from arising out of the same or similar conditions.

B.  **Other Insurance:** With respect to Coverages A. and B., this insurance shall be in excess of the applicable Deductible stated in Item 6. of the Declarations and shall not contribute with any other valid and collectible insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Coverage Part.

C.  **Inspection:**  Any of the Company's authorized representatives shall have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the **Insured's Products**, goods, operations and premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The **Insured** agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

D.  **Reporting of Changes in Products, Goods, Operations and Premises:**  The premium charged for this Coverage Part is based on those **Products**, goods, operations and premises identified in the underwriting information submitted to the Company on behalf of the **Insured** at the time of policy inception. The **Insured** shall report promptly to the Company any changes in those **Products**, goods, operations or premises as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

1.  any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

2.  any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

3.  any change in operations which are not accurately described by the description as specified in Item 8. of the Declarations.

E.  **Subrogation:**  In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all **Insureds** to the extent of such payment. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after the **Claim** to prejudice such rights.

The Company shall not exercise any such rights against any person, firms or corporations included in the definition of **Insured**. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **Claim** brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such **Insured**.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the **Insured** in excess of any Deductible(s); third, to any loss and expense payments by any excess carrier on behalf of

the **Insured**; fourth, to any loss and expense payments by any primary carrier on behalf of the **Insured**; and, last, to repayment of the **Insured's** Deductible.

## NETWORK SECURITY AND PRIVACY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

Throughout this Coverage Endorsement (hereinafter referred to as "Network Security Liability Coverage"), the words "you" and "your" refer to the Named Insured(s) shown in the Declarations of this policy and any other person(s) or organization(s) qualifying as a Named Insured under this Network Security Liability Coverage. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in "quotations" have special meaning. Refer to DEFINITIONS.

### COVERED CAUSE OF LOSS

This Network Security Liability coverage applies only if all of the following conditions are met:

1.  You first receive notice of a "network security liability suit" during the policy period for which this endorsement is applicable or any Extended Reporting Periods; and

2.  Such "network security liability suit" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

### COVERAGES PROVIDED

If both of the conditions listed above in COVERED CAUSE OF LOSS have been met, then we will provide you the following coverages for loss directly arising from such "network security liability suit".

**1.  Defense**

We will pay your necessary and reasonable "network security liability defense costs".

**2.  Settlement Costs**

We will pay your necessary and reasonable "network security liability settlement costs".

### LIMITS

Except for post-judgment interest, the most we will pay under this coverage is the Network Security Liability Limit indicated for this endorsement shown in the Declarations of this policy.

The Network Security Liability Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under this endorsement (other than post-judgment interest) arising out of all "network security liability suits" of which you first receive notice during the present annual policy period or any Extended Reporting Periods. This limit applies regardless of the number of "network security liability suits" of which you first receive notice during that period.

You may first receive notice of a "network security liability suit" in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "network security liability suit" (other than post-judgment interest) will be subject to the Network Security Liability Limit applicable to the policy period when notice of the "network security liability suit" was first received by you.

The Network Security Liability Limit for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security Liability Limit for the immediately preceding policy period.

### DEDUCTIBLE

The Network Security Liability coverage is subject to the Network Security Liability Deductible indicated in the Declarations for this policy. You shall be responsible for the applicable deductible amount as respects loss arising from each "network security liability suit" covered under this endorsement.

## EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS

© 2013
Includes copyrighted materials of Insurance Services Office, Inc.
with its permission.

**EXCLUSIONS**

The following additional exclusions apply:

We will not pay for costs or loss arising from the following:

1. Loss to the internet, an internet service provider, or any computer or computer system that is not owned or leased by you and operated under your control.

2. Costs to research or correct any deficiency.

3. Any fines or penalties.

4. Any criminal investigations or proceedings.

5. Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

6. Your intentional or willful complicity in a covered loss event or your reckless disregard for the security of your computer system or data.

7. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

8. That part of any "network security liability suit" seeking any non-monetary relief.

9. Any "network security liability suit" arising from a propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data that occurred prior to the first inception of this Network Security Liability  coverage endorsement or any coverage substantially similar to that described in this endorsement.

10. The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

**ADDITIONAL CONDITIONS**

The following additional conditions apply to this endorsement.

**A. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for:

1. Providing and maintaining appropriate computer and internet security; and

2. Maintaining and updating at appropriate intervals backups of computer data.

**B. Duties in the Event of a "Network Security Liability Suit"**

If a "network security liability suit" is brought against you, you must:

1. Immediately record the specifics of the "network security liability suit" and the date received; and

2. Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "network security liability suit" is first received by you.

3. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "network security liability suit";

4. Authorize us to obtain records and other information;

5. Cooperate with us in the investigation, settlement or defense of the "network security liability suit";

6. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

7. Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "network security liability suit".

**C. Extended Reporting Periods**

1. You shall have the right to the Extended Reporting Periods described in this section, in the event of a "termination of coverage".

2. If a "termination of coverage" has occurred, you shall have the right to the following:

   a. An Automatic Extended Reporting Period of 30 days after the effective date of "termination of coverage" at no additional premium in which to give us written notice of a "network security liability suit" of

**Page 2 of 5**

which you first receive notice during said Automatic Extended Reporting Period for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this Network Security Liability  coverage and which is otherwise covered by this Network Security Liability  coverage; and

b.  Upon payment of an additional premium of 100% of the full annual premium applicable to this Network Security Liability  coverage, a Supplemental Extended Reporting Period of 1 year immediately following the effective date of "termination of coverage" in which to give to us written notice of a "network security liability suit" of which you first receive notice during said Supplemental Extended Reporting Period for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this Network Security Liability  coverage and which is otherwise covered by this Network Security Liability  coverage.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 30 days of the effective date of "termination of coverage". The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**D. Network Security Liability Defense**

1.  We shall have the right and the duty to assume the defense of any applicable "network security liability suit" against you. You shall give us such information and cooperation as we may reasonably require.

2.  You shall not admit liability for or settle any "network security liability suit" or incur any defense costs without our prior written consent.

3.  If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "network security liability suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

4.  We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "network security liability suit", after the Network Security Liability Limit has been exhausted.

5.  We shall pay all interest on that amount of any judgment within the Network Security Liability Limit which accrues:

a.  After entry of judgment; and

b.  Before we pay, offer to pay or deposit in court that part of the judgment within the Network Security Liability Limit or, in any case, before we pay or offer to pay the entire Network Security Liability Limit.

These interest payments shall be in addition to and not part of the Network Security Liability Limit.

**E. Other Data Coverage in This Policy**

Some elements of this Network Security Liability  coverage may also be covered under the policy to which this endorsement is attached. If so, this Network Security Liability  coverage will apply as excess, additional coverage. If loss payment has been made under the policy for the same event, the amount of such payment will count towards the deductible that applies to this Network Security Liability  coverage.

**F. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this endorsement:

1.  The effectiveness of such services depends on your cooperation and assistance.

2.  We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**DEFINITIONS**

© 2013
Includes copyrighted materials of Insurance Services Office, Inc.,
with its permission.

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Network Security Liability Defense Costs"

   a. "Network security liability defense costs" means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "network security liability suit" against you. Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   b. "Network security liability defense costs" does not mean your salaries or your loss of earnings.

2. "Network Security Liability Settlement Costs"

   a. "Network security liability settlement costs" means the following, when they arise from a "network security liability suit":

      1) Damages, judgments or settlements; and

      2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Network security liability settlement costs" does not mean:

      1) Civil or criminal fines or penalties imposed by law;

      2) Punitive or exemplary damages;

      3) The multiplied portion of multiplied damages;

      4) Taxes; or

      5) Matters which may be deemed uninsurable under the applicable law.

3. "Network Security Liability Suit"

   a. "Network security liability suit" means a civil proceeding against you in which damages are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. Such proceeding must be based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed one or more of the following to happen:

      1) The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

      2) The unintended abetting of a denial of service attack against one or more other systems.

   b. "Network security liability suit" also means a civil proceeding against you in which damages are alleged which is brought in the United States of America, Puerto Rico or Canada and which is based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed the loss, release or disclosure of business data that is owned by or proprietary to a third party. This does not include personally identifying information or other information that is sensitive or personal to individuals.

   c. "Network security liability suit" includes the following:

      1) An arbitration or alternative dispute resolution proceeding that you are required to submit to or which we agree you should submit to; or

      2) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   d. "Network security liability suit" does not mean any demand or action alleging or arising from property damage or bodily injury.

   e. "Network security liability suit" does not mean any demand or action brought by or on behalf of someone who is:

      1) Your director or officer;

      2) Your owner or part-owner; or

      3) A holder of your securities;

      in their capacity as such, whether directly, derivatively, or by class action.

4. "Termination of Coverage" means:

NAV-HCP-173 (12/16)

© 2013
Includes copyrighted materials of Insurance Services Office, Inc., with its permission.

a.  You or we cancel this Network Security Liability  coverage;

b.  You or we refuse to renew this Network Security Liability  coverage; or

c.  We renew this Network Security Liability  coverage on an other than claims-made basis or with a retroactive date later than the date of the first inception of this Network Security Liability  coverage endorsement or any coverage substantially similar to that described in this endorsement.

ALL OTHER PROVISIONS OF THIS POLICY APPLY.

© 2013
Includes copyrighted materials of Insurance Services Office, Inc.,
with its permission.

**Policyholder Notice**

## CLAIM REPORTING PROCEDURES

Conditions of the policy require that in the event of a claim, you notify us as soon as practicable. All claim notifications are to be reported to the Danbury Office by electronic mail to newloss@thehartford.com

In the alternative, claim notices may also be:

☐     Mailed to the Danbury Office at:

        Navigators Management Co., Inc.
        Claims Division
        83 Wooster Heights Road
        Danbury, CT 06810

All claims notifications must contain current contact information for the insured and claimant(s) as well as a detailed description of the loss.

If the insured files a claim with the agent, it is the agent's responsibility to forward the claim to the Danbury Office.

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

# SUPPLEMENTARY PAYMENTS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
  **OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

The Company will pay up to $750 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the Company's request, at a trial, hearing, mediation or arbitration proceeding involving a claim against the **Insured**.  The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings or the number of **Insureds** shall be $7,500 per **Policy Period**.

The Company will pay expenses incurred while assisting the **Insured** in responding to a subpoena which the **Insured** first receives and reports in writing to the Company during the **Policy Period** resulting from the performance of **Professional Services** by the **Insured**.  The maximum amount payable regardless of the number of subpoenas or number of **Insureds** shall be $7,500 per **Policy Period**, provided that all subpoenas arising out of related claims shall be deemed to constitute a single subpoena.


Supplementary Payments are not subject to a deductible and are in addition to the Limits of Liability stated in Item(s) 4. and 5.  of the Declarations.

# CLAIM EXPENSES IN ADDITION TO THE LIMIT OF LIABILITY – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section Limits of Liability A., B. and C. are deleted and replaced with the following:

    A.  **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for **Damages** for all **Claims** because of all **Bodily Injury** or **Property Damage** sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 5.A.1. of the Declarations as applicable to Each Occurrence.

    B.  **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for **Damages** for all **Claims**, including those subject to the above provision regarding the Coverage A - Limit of Liability – Each Occurrence, because of **Property Damage** to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 5.A.2. of the Declarations as applicable to **Damages** to Premises – Any One Premises.

    C.  **Coverage B. - Limit of Liability-Each Person or Organization:**  The total liability of the Company for **Damages** for all **Claims** under Coverage B. because of all **Personal Injury** and all **Advertising Injury** sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 5.B.2. of the Declarations as applicable to Each Person or Organization.

2.  Section Defense, Settlements and **Claim Expenses** is deleted and replaced with the following:

    The Company shall have the right and duty to defend and investigate any **Claim** to which Coverage A. and/or B. under this Coverage Part applies. The Company may make such investigation and settlement of any **Claim** as it deems expedient. **Claim Expenses** incurred in defending and investigating a **Claim** shall be in addition to the applicable Limits of Liability stated in Item 5 of the Declarations. Such **Claim Expenses** shall not reduce the Limits of Liability and shall be applied against the Deductible.

# CLAIM EXPENSES IN ADDITION TO THE EACH CLAIM LIMIT OF LIABILITY – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Section Limits of Liability A. is deleted and replaced with the following:

    A.    **Limit of Liability-Each Claim:**  The total liability of the Company for **Damages** for each **Claim** first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 4.A. of the Declarations as applicable to Each **Claim**.

2.    Section Defense, Settlements and **Claim Expenses** is deleted and replaced with the following:

**DEFENSE, SETTLEMENTS AND CLAIM EXPENSES**

The Company shall have the right and duty to defend and investigate any **Claim** to which coverage under this Coverage Part applies. Subject to Section Limits of Liability, the Company may make such investigation and settlement of any **Claim** as it deems expedient.

**Claim Expenses** incurred in defending and investigating a **Claim** shall be in addition to the applicable Limits of Liability stated in Item 4 of the Declarations. Such **Claim Expenses** shall not reduce the Limits of Liability and shall be applied against the Deductible.

## COMMUNICABLE DISEASE EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**
**ALLIED HEALTHCARE EXCESS FOLLOW FORM PROFESSIONAL AND GENERAL LIABILITY POLICY**
**ALLIED HEALTHCARE UMBRELLA LIABILITY POLICY**

**A.**   The following is added to the **EXCLUSIONS** sections of all policies and coverage parts listed above:

This insurance does not apply to any **Claim** seeking relief, remedy or recovery of any kind or description or **Damages** arising out of, relating to, or resulting from, in consequence of, attributable to, or in any way involving the following:

**1.**   **Bodily Injury, Professional Personal Injury** or **Property Damage** arising out of the actual or alleged transmission of a **Communicable Disease**; and

**2.**   **Personal Injury** and **Advertising Injury** arising out of the actual or alleged transmission of a **Communicable Disease**.

**B.**   This exclusion applies even if the **Claims** against any **Insured** allege negligence or other act, error, or omission in the:

**1.**   Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a **Communicable Disease**;

**2.**   Testing for a **Communicable Disease**;

**3.**   Treatment of a **Communicable Disease**;

**4.**   Failure to prevent the spread of a **Communicable Disease**; or

**5.**   Failure to report a **Communicable Disease** to authorities.

**C.**   The following definition is added to the **DEFINITIONS** sections of all of the policies and coverage parts listed above:

**Communicable disease** means an illness caused by an infectious disease or its toxins that occurs through the direct or indirect transmission of the infectious agent or its products from an infected individual.

All other terms, conditions, and exclusions shall remain the same.

© 2022 by The Hartford. Classification: Non-Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

**LIMITED NARCOTICS EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

A. The following exclusion is added to subparagraph **EXCLUSIONS** in **Allied Healthcare Professional Liability Coverage Part**:

Any **Claim** based upon or arising out of any actual or alleged liability or **Damages** based upon or arising out of any of the following:

1. The use of any **Narcotic**;

2. The manufacture, sale, distribution or diversion of any **Narcotic**;

3. The absence, failure or inadequacy of, or the failure to follow or perform, any controls, practices or procedures required by any regulation, statute, ordinance, law, legislation, judicial or other legal act of any nation, state, province, municipality, regulatory agency or other governmental division or subdivision to prevent or report suspicious acts related to any **Narcotic**;

4. The absence, failure or inadequacy of, or the failure to follow or perform, any recordkeeping controls, practices or procedures related to any **Narcotic**;

5. The failure to warn or the inadequacy or absence of any warnings, labels or instructions related to the use of any **Narcotic**

6. Advertisements, warranties, representations, misrepresentations, literature, marketing or informational materials related to any **Narcotic**;

7. The absence, failure or inadequacy of, or failure to follow or perform, any controls, practices or procedures related to the marketing, sale, storage, inventory, safeguarding, distribution, or diversion of any **Narcotic**; or

8. The willful violation of any regulation, statute, ordinance, law, legislation, judicial or other legal act of any nation, state, province, municipality, regulatory agency or other governmental division or subdivision related to any **Narcotic.**

This Exclusion, however, does not apply to the following:

1. Filling and Dosage Errors: Any **Claim** brought by an individual patient or by an individual on behalf of that patient, who is the recipient of an incorrectly filled prescription due to an actual or alleged negligent act, error or omission by the Insured in the filling of a prescription for a **Narcotic** with (a) the incorrect **Narcotic**, or (b) the incorrect dosage of the prescribed **Narcotic**; or

NAV-HCP-182 (11/20)

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

2. Prescribing and Administering Errors: Any Claim brought by an individual patient, or by an individual on behalf of a patient, arising out of an actual or alleged negligent act, error or omission by the Insured in (a) the prescribing of a **Narcotic** for its intended and appropriate use, or (b) the administering of a prescribed **Narcotic** its intended and appropriate use to the individual patient.

B. The following exclusion is added to subparagraph **EXCLUSIONS** in **Allied Healthcare General Liability (Including Products and Completed Operations Liability) Coverage Part**:

Any **Claim** based upon or arising out of any actual or alleged liability or **Damages** based upon or arising out of any of the following:

1. The use of any **Narcotic**;

2. The manufacture, sale, distribution or diversion of any **Narcotic**;

3. The absence, failure or inadequacy of, or the failure to follow or perform, any controls, practices or procedures required by any regulation, statute, ordinance, law, legislation, judicial or other legal act of any nation, state, province, municipality, regulatory agency or other governmental division or subdivision to prevent or report suspicious acts related to any **Narcotic**;

4. The absence, failure or inadequacy of, or the failure to follow or perform, any recordkeeping controls, practices or procedures related to any **Narcotic**;

5. The failure to warn or the inadequacy or absence of any warnings, labels or instructions related to the use of any **Narcotic;**

6. Advertisements, warranties, representations, misrepresentations, literature, marketing or informational materials related to any **Narcotic**;

7. The absence, failure or inadequacy of, or failure to follow or perform, any controls, practices or procedures related to the marketing, sale, storage, inventory, safeguarding, distribution, or diversion of any **Narcotic**; or

8. The willful violation of any regulation, statute, ordinance, law, legislation, judicial or other legal act of any nation, state, province, municipality, regulatory agency or other governmental division or subdivision related to any **Narcotic.**

C. The following definition is added to subparagraph **DEFINITIONS** in **COMMON POLICY CONDITIONS**:

**Narcotic** means any drug, medication or substance of any type, nature, or kind, including all derivatives, degradation by-products, variants, or counterfeit, synthesized or synthetic versions, thereof:

a. defined by or included in the United States Controlled Substances Act [21 U.S.C § 801, et seq. (including its Schedules)] or any other regulatory, statutory, legislative, judicial or other legal action of any nation, state, province, municipality or other governmental division or subdivision; or

b. defined by the United States Food and Drug Administration, 21 C.F.R. § 1300.01, *et seq.*;

NAV-HCP-182 (11/20)

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Including, but not limited to, any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis:

(1) Opium, opiates, opioids and derivatives of opium, opiates and opioids, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers whenever the existence of such isomers, esters, ethers and salts is possible within the specific chemical designation. Such term does not include the isoquinoline alkaloids of opium;
(2) Poppy straw and concentrate of poppy straw;
(3) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine and derivatives of ecgonine or their salts have been removed;
(4) Cocaine, its salts, optical and geometric isomers, and salts of isomers;
(5) Ecgonine, its derivatives, their salts, isomers and salts of isomer; or
(6) Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in paragraphs (1) through (5) of this definition.

All other provisions of this policy remain unchanged.

NAV-HCP-182 (11/20)

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

# OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

# DAMAGE TO RENTED PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that:

1. Section Insuring Agreements A. is amended by the addition of the following:

   The Company will pay on behalf of the **Insured Damages** and **Claim Expenses** which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Property Damage** to the premises, while rented to the Named Insured or temporarily occupied by the Named Insured with permission of the owner arising out of any one fire during the **Policy Period** or any applicable Extended Reporting Period, except as excluded or limited by the terms, conditions and exclusions of this Policy.

2. The Company's Limit of Liability for **Damages** and **Claim Expenses** resulting from **Claims** as respects **Property Damage** in regards to the Damage to Rented Premises coverage shall be $250,000 each claim, which amounts shall be part of, and not in addition to, the aggregate limit of liability set forth in Item 5.D. of the Declarations.  Solely with respect to any **Claims** for Damage to Rented Premises liability, the deductible of $10,000 applies separately for each claim.

3. With respect to Damage to Rented Premises coverage only, Exclusions B.9. is amended by the addition of the following paragraph:

   This exclusion does not apply to **Property Damage** to structures or portions thereof rented to or occupied by the Named Insured, including fixtures permanently attached thereto, if such **Property Damage** arises out of fire.

4. Exclusion B.9.i-iii. is deleted and replaced with the following:

   9. to any **Claim** arising out of, or occurrence involving **Property Damage** to:

      i.     property owned, rented, or temporarily occupied by the Named Insured with permission of the owner, including fixtures permanently attached thereto;

      ii.    premises sold or abandoned by the Named Insured;

      iii.   property loaned to the Named Insured;

      iv.    personal property in the care, custody or control of the Named Insured;

      v.     that particular part of real property on which the Named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured or temporarily occupied by the Named Insured as to premises rented to the Named Insured or temporarily occupied by the Named Insured

with permission of the owner if such **Property Damage** arises out of those operations;

vi.    that particular part of any property that must be restored, repaired or replaced because the **Insured's** work was incorrectly performed on it.

Paragraph i. of this Exclusion does not apply to **Property Damage** to premises rented to the Named Insured or temporarily occupied by the Named Insured with permission of the owner, if such **Property Damage** arises out of fire.

Paragraph ii. of this Exclusion does not apply if the premises are the **Insured's** work and were never occupied, rented or held for rental by the Named Insured.

Paragraphs iii, iv, v, and vi. of this Exclusion does not apply to liability assumed under a sidetrack agreement.

Paragraph vi. of this Exclusion does not apply to **Property Damage** included in any Products/**Completed Operations Liability Hazard** coverage.

5.    For purposes provided under this Endorsement, Section Other Conditions B. is amended by the addition of the following:

The insurance proved for **Property Damage** to the structures or portions thereof rented to or temporarily occupied by the Named Insured, including fixtures permanently attached thereto, where coverage is provided under Paragraph i. above this Endorsement, shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **Insured**.

6.    Under no circumstances will this coverage be extended to cover first party **Property Damage** or **Property Damage** to personal property.

All other terms and conditions of this Policy remain unchanged.

# CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART
ALLIED HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY**

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

# 25% MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
  **OPERATIONS LIABILITY) COVERAGE PART**
**ALLIED HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY**

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

# SEXUAL ACTS LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the Allied Healthcare Professional Liability Insurance Coverage Part is amended as follows:

1.    Section Insuring Agreement is amended by the addition of the following:

**Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

   A.    such Sexual Act arises out of the conduct of the Insured's Professional Services;

   B.    such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 9. of the Declarations and before the end of the Policy Period; and

   C.    prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.    Section Definitions is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

3.    Section The Exclusions I. is deleted.

4.    Section The Exclusions is amended by the addition of the following exclusions:

   BB.    to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

CC.  to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

DD.  to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

EE.  to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5.  Section Limits of Liability is amended by the addition of the following:

F.  **Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

1.  $1,000,000     All Claims Made by Each Claimant

2.  $3,000,000     All Claims under Sexual Acts Liability Coverage

Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

6.  The Limits of Liability section is amended by the addition of the following:

Subject to Section Limits of Liability F., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the amount stated in Item 4.B. of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

It is further understood and agreed that the Allied Healthcare General Liability Insurance Coverage Part is amended as follows:

1.  Section Definitions is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

2.      Section The Exclusions A. under the under the Allied Healthcare General Liability Insurance Coverage Part is amended by the addition of the following exclusions:

(i)      any Claim based upon or arising out of any Sexual Injury; or

(ii)     to any Claim based upon or arising out of any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

# NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
  **OPERATIONS LIABILITY) COVERAGE PART**

This exclusion modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

    A.  Under any Liability Coverage, to **Bodily Injury** or **Property Damage**

    (1)  with respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **Bodily Injury** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if

    (1)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

    (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

    (3)  the **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **Property Damage** to such nuclear facility and any property thereat.

2. **As used in this exclusion:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property Damage**" includes all forms of radioactive contamination of property.

# STOP GAP EMPLOYER'S LIABILITY INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

**1.** Item 5. of the Declarations, Limits of Liability, is amended by the addition of the following:

**5.E.** For Coverage E. (Stop Gap Employer's Liability):

|  |  |  |
|---|---|---|
| **(i)** | Bodily Injury by Accident each Accident: | $500,000 |
| **(ii)** | Bodily Injury by Disease each Employee: | $500,000 |
| **(iii)** | Bodily Injury by Disease Aggregate all Employees: | $500,000 |

**2.** Solely with respect to Coverage E., Stop Gap Employer's Liability, Section The Insured is deleted and replaced with the following:

**THE INSURED**

The unqualified word "Insured", either in the singular or plural, means:

**A.** the Named Insured specified in Item 1. of the Declarations if such person or organization specified in Item 1. of the Declarations is an employer but only in such Named Insured's capacity as an employer of the Named Insured's Employees;

**B.** if the Named Insured specified in Item 1. of the Declarations is a partnership or joint venture, any partner or member thereof but only in such partner's or member's capacity as an employer of the Named Insured's Employees;

**C.** if the Named Insured specified in Item 1. of the Declarations is a limited liability company, any manager or member thereof but only in such manager's or member's capacity as an employer of the Named Insured's Employees;

**D.** if the Named Insured specified in Item 1. of the Declarations is other than a partnership, joint venture or limited liability company, any executive officer or director thereof but only in such executive officer's or director's capacity as an employer of the Named Insured's Employees.

**3.** Section Insuring Agreements is amended by the addition of Coverage E., Stop Gap Employer's Liability, as follows:

**E. Coverage E. - Stop Gap Employer's Liability:** The Company shall pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as Damages because of Bodily Injury of any Employee of the Named Insured which Bodily Injury is caused:

**1.** by accident that occurs during the Policy Period; or

**2.** by disease caused by or aggravated by conditions of employment by the Named Insured and the injured Employee's last day of last exposure to the conditions causing or aggravating such Bodily Injury by disease occurs during the Policy Period;

provided:

**a.** the Bodily Injury is reported to the Company pursuant to Section Claim Reporting Provision;

**b.** the Bodily Injury takes place in the United States of America, its territories or possessions or Puerto Rico;

**c.** the Bodily Injury arises out of and in the course of the injured Employee's employment by the Named Insured; and

**d.** such Employee, at the time of the injury, is reported and declared under a workers' compensation fund of the state(s) of Ohio and Wyoming;

NAV-HCP-144 (01/14)                                                                                    Page 1 of 3

**e.** Damages because of Bodily Injury include Damages claimed by any person or organization for care, loss of services or death resulting at any time from the Bodily Injury.

**4.** Section Exclusions is amended by the addition of the following:

This Coverage E., Stop Gap Employer's Liability, does not apply to:

**a.** any liability assumed by the Insured under any contract or agreement;

**b.** Bodily Injury sustained by: (1) a master or member of the crew of any vessel or by any Employee of the Named Insured in the course of employment subject to the Federal Employer's Liability Act; (2) United States Longshore and Harbor Workers' Compensation Act; or (3) Federal Coal Mine Health & Safety Act;

**c.** Bodily Injury involving an Employee employed in violation of law: (1) with the Insured's actual knowledge or that of any of the Insured's partners or executive officers; or (2) with respect to the payment of any punitive damages or exemplary damages;

**d.** Bodily Injury suffered by any Employee: (1) whose remuneration has not been included in the total remuneration reported and declared to a state workers' compensation fund; or (2) for whom the Insured is not required to contribute to a state worker's compensation fund;

**e.** aircraft operation or the performance of any duty in connection with aircraft while in flight;

**f.** any Claim for Bodily Injury with respect to which the Insured is deprived of any defense or defenses, or which is otherwise subject to penalty because of default in the premium payment under, or any other failure to comply with the provisions of any workers' compensation law;

**g.** any premium, assessment, penalty, fine, benefits or other obligation imposed by any workers' compensation, unemployment compensation or disability benefits law or under any similar law for which the Insured, or any carrier as the Insured's insurer may be held liable; or for which the Insured is a qualified self insurer;

**h.** any Bodily Injury intentionally caused or aggravated by the Insured or at the Insured's direction or any Bodily Injury resulting from an act which is determined to have been committed by the Insured or at the Insured's direction, with the belief that a Bodily Injury is substantially certain to occur.

Exclusion h. shall not exclude coverage for the Insured's legal liability other than benefits or compensation provided for under any workers' compensation act, resulting from the deliberate intentional act of any Employee or agent (other than an executive officer, director, stockholder or partner) that produce injury or death of another Employee when such act is committed within the scope of employment;

**i.** Bodily Injury arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any Employee, or any personnel practices, policies, acts or omissions.

**5.** Solely with respect to Coverage E., Stop Gap Employer's Liability, Section Limits of Liability is amended by the addition of the following:

**H.  Coverage E. – Limit of Liability-Bodily Injury by Accident Each Accident:** The total liability of the Company for the combined total of Damages and Claim Expenses because of all Bodily Injury by accident to one or more Employees for each accident shall not exceed the amount stated in Item 5.B.1. of the Declarations as applicable to Bodily Injury by Accident each Accident. A disease is not Bodily Injury by accident unless it results directly from Bodily Injury by accident.

**I.  Coverage E. – Limit of Liability-Bodily Injury by Disease Each Employee:** The total liability of the Company for the combined total of Damages and Claim Expenses because of all Bodily Injury by disease to each Employee shall not exceed the amount stated in Item 5.B.2. of the Declarations as applicable to Bodily Injury by Disease each Employee. Bodily Injury by disease does not include disease that results directly from Bodily Injury by accident.

**J.  Coverage E. – Limit of Liability-Bodily Injury by Disease Aggregate all Employees**: Subject to the above Limit of Liability – Bodily Injury by Disease Each Employee, the total liability of the Company shall not exceed the amount stated in Item 5.D. of the Declarations as applicable to Bodily Injury by Disease Aggregate all Employees for the combined total of all Damages and Claim Expenses because of all Bodily Injury by disease to all Employees, regardless of the number of Employees who sustain Bodily Injury by disease. Bodily Injury by disease does not include disease that results directly from Bodily Injury by accident.

6.  Section Limits of Liability E. is deleted and replaced with the following:

**E.  Limit of Liability - Policy Aggregate:**  Subject to the above Limits of Liability A., B. and C. and the Coverage E. Limits of Liability stated in Item 5. of this endorsement, the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 5.D. of the Declarations for all Damages and Claim Expenses for Coverage A., B. and E. and all medical expenses for Coverage C.

7.  Solely with respect to Coverage E., Stop Gap Employer's Liability, Section Limits of Liability G. is deleted and replaced with the following:

**G.  Multiple Insureds, Claims, Occurrences, Offenses and Claimants:**

**1.**  Solely with respect to Coverage A., B. and C., the inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5. of the Declarations.

More than one Bodily Injury and/or Property Damage, including any continuation, change or resumption of such Bodily Injury or Property Damage, arising out of a single Occurrence shall be considered a single Occurrence. All such Bodily Injury or Property Damage shall be deemed to take place on the date on which the earliest Bodily Injury or Property Damage happens.

All Damages and Claim Expenses sustained because of one or more Personal Injury, Advertising Injury and/or offense by any one person or organization shall be subject to the Limit of Liability stated in Item 5.B.1. of the Declarations as applicable to Each Person or Organization. All such Personal Injury or Advertising Injury shall be deemed to take place on the date on which the earliest Personal Injury or Advertising Injury happens.

**2.**  Solely with respect to Coverage E., regardless of the number of: (1) Insureds under this policy; (2) persons who sustain Bodily Injury; or (3) Claims made on account of Bodily Injury; the Company's Limits of Liability shall be as stated in Item 5.E. of the Declarations.

8.  Section Claim Reporting Provision, is deleted and replaced as follows:

**1.**  Solely with respect to Coverage E., Stop Gap Employer's Liability, the Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable of:

**(i)**  any Bodily Injury by accident that occurs during the Policy Period; or

**(ii)**  any Bodily Injury by disease caused by or aggravated by conditions of employment by the Named Insured and the injured Employee's last day of last exposure to the conditions causing or aggravating such Bodily Injury by disease occurs during the Policy Period.

**2.**  Solely with respect to the coverage afforded hereunder other than Coverage E., Stop Gap Employer's Liability, the Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable of any Occurrence or offense that happens during the Policy Period which may give rise to a Claim against the Insured.

**3.**  In the event suit is brought against the Insured, the Insured shall immediately forward to Professional Liability Claims Department, NAVIGATORS GROUP, INC., One Penn Plaza, New York, NY 10119, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

# EMPLOYEE BENEFITS LIABILITY COVERAGE - COVERAGE D.

# THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Item 9. of the Declarations, Retroactive Date, is amended by the addition of the following:

    For Employee Benefits Liability Coverage: May 1, 2017

2.  Item 5.A. of the Declarations, Limits of Liability, is amended by the addition of the following:

    5.  For Coverage D. (Employee Benefits Liability):

        (i)  Each Claim:                                             $1,000,000

        (ii) Aggregate:                                             $3,000,000

3.  Item 6. of the Declarations, Deductible, is amended by the addition of the following:

    3.  For Coverage D. (Employee Benefits Liability):

        Each Claim:                                                 $1,000

4.  Item 10. of the Declarations, Premium for Extended Reporting Period, the words "For Professional Liability" are amended to read "For Professional Liability and Employee Benefits Liability."

5.  Section The Insured is amended by the addition of the following:

    As respects Employee Benefits Liability Coverage only:

    the Named Insured and any principal, partner, officer, director or Employee of the Named Insured; provided that such Employee is authorized to act in the Administration of the Named Insured's Employee Benefits Program.

6.  Section Insuring Agreements is amended by the addition of the following:

    D.      **Coverage D. - Employee Benefits Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amounts stated in Item 6. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to

            Section Claim Reporting Provision, by Employees or their legal representatives, which arise out of any act, error or omission in the Administration of the Named Insured's Employee Benefits Program provided:

            1.  the act, error or omission happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 9. of the Declarations and before the end of the Policy Period; and

2.  prior to the effective date of this endorsement the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

7.  Solely for purposes of this endorsement, the following definitions shall apply:

**Administration** means conduct of the Insured, or of any person for whose acts, errors or omissions the Insured is legally responsible, with respect to:

(a)  providing information to Employees, or their dependents and beneficiaries, regarding the Named Insured's Employee Benefit Program;

(b)  handling of records in connection with the Named Insured's Employee Benefits Program; or

(c)  effecting enrollment, termination or cancellation of Employees, or their dependents and beneficiaries, in the Named Insured's Employee Benefits Program;

Provided, however, Administration does not include handling payroll deductions.

**Employees** means Employees or former Employees.

**Employee Benefits Program** means any program providing some or all of the following benefits to Employees of the Named Insured:

1.  group life, accident or health insurance, dental, vision and hearing plans; and flexible spending accounts provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan's eligibility requirements;

2.  profit sharing plans, employee stock subscription plans, employee stock ownership plans, employee savings plans and pension plans; provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan's eligibility requirements;

3.  unemployment insurance, social security benefits, workers' compensation or disability benefits; and

4.  vacation plans and leave of absence programs.

8.  Section Definitions, Claim, is deleted for purposes of this endorsement only and replaced solely with respect to Coverage D. Employee Benefits Liability:

**Claim** means a demand received by the Insured for compensation for Damages, including service of suit or institution of arbitration proceedings against the Insured.

9.  Section The Exclusions is amended by the addition of the following:

E.  With respect to Coverage D. Employee Benefits Liability only, this Coverage Part does not apply to:

1.  any Claim based upon or arising out of any dishonest, fraudulent, criminal, or malicious or knowingly wrongful acts, errors or omissions;

2.  any Claim based upon or arising out of Bodily Injury, Property Damage, Personal Injury or Advertising Injury;

3.  any Claim based upon or arising out of unlawful discrimination;

4.  any Claim based upon or arising out of wrongful termination or other employment related practices;

5.  any Claim based upon or arising out of the Insured's failure to comply with workers' compensation, unemployment compensation, social security or disability benefits laws or any similar law;

6. any Claim based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law;

7. any Claim based upon or arising out of the investment or non-investment of any Employee Benefits Program funds;

8. any Claim based upon or arising out of failure of any investment or security to perform;

9. any Claim for failure of performance of contract by any insurer;

10. any Claim based upon or arising out of insufficient funds to meet any obligations under any Employee Benefits Program;

11. any Claim based upon or arising out of the failure or inability of any entity to make any payments or provide any benefits due under any Employee Benefits Program;

12. any Claim for benefits under any Employee Benefits Program to the extent that such benefits, with reasonable effort and cooperation of the Insured, are available from the applicable benefit funds or other available and collectible insurance;

13. any Claim based upon or arising out of advice given or which should have been given to any Employees to participate or not to participate in any Employee Benefits Program;

14. criminal or civil fines, taxes, or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

15. any Claim based upon or arising out of the selection, design, planning, development, creation, formation, or structure of any Employee Benefits Program; or

16. any Claim based upon or arising out of any change in availability, eligibility or cost of any Employee Benefits Program.

10. Solely for purposes of this endorsement, Section Limits of Liability is amended by the addition of the following:

    H. **Coverage D. - Employee Benefits Liability**

        1. **Limit of Liability - Each Claim**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, for each Claim insured herein shall not exceed the Limits of Liability stated in Item 5.A.5.(i) of the Declarations applicable to Each Claim.

        2. **Limit of Liability - Coverage Aggregate:** Subject to the above Limits of Liability the total liability of the Company shall not exceed the Coverage Aggregate Limit of Liability as stated in Item 5.D. of the Declarations for all Damages and Claim Expenses under Coverage D.

11. Solely for purposes of this endorsement, the first paragraph of Section Limits of Liability F. is deleted and replaced with the following:

    F. **Deductible:** The Deductible amount stated in Item 6. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages are paid.

12. Solely with respect to this endorsement, Section Limits of Liability G., Multiple Insureds, Claims, Occurrences, Offenses and Claimants, is amended by the addition of the following:

More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be considered first made on the date on which the earliest Claim arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

13. Solely with respect to this endorsement, Section Defense, Settlements and Claim Expenses is amended by the addition of the following:

The Company shall have the right to defend and investigate any Claim to which this endorsement applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.D. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limits of Liability stated in Item 5.D. of the Declarations have been exhausted.

14. Solely for purposes of the coverage provided by this endorsement, Section Claim Reporting Provision is amended by the addition of the following:

The Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

15. Solely for purposes of the coverage provided by this endorsement, the following is added:

**Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific act, error or omission which may result in a Claim within the scope of the coverage provided for in this endorsement, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.  the description of the specific act, error or omission;

2.  the date on which such act, error or omission took place;

3.  the injury or damage which has or may result from such act, error or omission;

4.  the identity of any injured persons; and

5.  the circumstances by which the Insured first became aware of such act, error or omission.

16. Solely for purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or if this endorsement is attached to a claims made General Liability Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

A.  The Named Insured's right to exercise the Extended Reporting Period under this endorsement shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

Nothing contained herein shall afford the Named Insured the right to exercise an Extended Reporting Period in any Insuring Agreement in the policy providing coverage on an occurrence basis.

B.  If the Named Insured nonrenews this policy in it entirety or cancels this policy in its entirety pursuant to Common Policy Conditions, Section Other Conditions A., Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Common Policy Conditions, Section Other Conditions A., Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named

Insured shall have the right to exercise the Extended Reporting Period under this endorsement subject to Extending Reporting Period A. above, as regards all Insuring Agreements included under this policy, other than any Insuring Agreements affording coverage on an occurrence basis, upon payment of an additional premium calculated at the percentage stated in Item 10. of the Declarations of the annual deposit premium for the policy, subject to adjustment as per Common Policy Conditions, Section Other Conditions G., Premium and Audit, but in no event less than the percentage set forth in Item 10. of the Declarations of the annual minimum premium for the policy to extend the coverage granted under this endorsement to Claims first made against the Insured during the period of months stated in Item 10. of the Declarations as elected by the Named Insured, and reported to the Company pursuant to, Section Claims A., Claim Reporting Provision, following immediately upon the effective Date of such cancellation or nonrenewal, for any act, error or omission negligently committed in the Administration of the Insured's Employee Benefit Program rendered on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this endorsement. This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this endorsement as the Extended Reporting Period.

C.  As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:  (1) all deductibles when due; (2) all premiums due for the Policy Period; and (3) all premiums due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in Item 11. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of election and payment of additional premium are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

D.  The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

E.  In the event of the purchase of the Extended Reporting Period the entire premium therefrom shall be fully earned at its commencement.

F.  The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 5.D. of the Declarations.

# ADDITIONAL INSURED ENDORSEMENT – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Section The Insured is amended by the addition of the following:

Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.    **Additional Insured** means, whenever used in this endorsement, the following:

Issaquah Municipal Court;
Clayton County Central Services Department;
County of Fresno, its officers, agents, and employees, individually and collectively;
County of Tulare (including its officers, agents, employees and volunteers); and
County of Orange, its elected and appointed officials, officers, agents and employees.

3.    Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4.    No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

5.    Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

NAV-HCP-107 (01/14)                                                      Page 1 of 1

# ADDITIONAL NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
**    OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that Item 1. of the Declarations is amended to include the following:

| Name | Retroactive Date |
|------|------------------|
| Avertest LLC DBA Avertest | December 7, 2010 |
| Avertest LLC DBA Averhealth | December 7, 2010 |
| Alcohol Drug Administrative Monitoring, Inc. (ADAM) | November 8, 2021 |

All other provisions of this policy remain unchanged.

# HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) – CIVIL MONETARY PENALTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

Item Q. of the EXCLUSIONS section is hereby deleted in its entirety; and the Policy is amended to include the following:

**HIPAA Civil Monetary Penalty Coverage:**  The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in the Declarations, which the **Insured** shall become legally obligated to pay as a **Civil Monetary Penalty** as a result of a **HIPAA Civil Violation** first made against the **Insured** during the Policy Period or during the Extended Reporting Period, if exercised, arising out of any **HIPAA Civil Violation** committed or alleged to have been committed by the **Insured** or by any person for whose actions the **Insured** is legally responsible provided:

    **1.**  such **HIPAA Civil Violation**:

        **a.**  arises out of the conduct of the **Insured's** Professional Services; and

        **b.**  is committed or alleged to have been committed during the Policy Period or on or after the Retroactive Date as stated in the Declarations; and

    **2.**  prior to the effective date of this policy the **Insured** had no knowledge of such **HIPAA Civil Violation** or any fact, circumstance, situation or incident which may result in a **HIPAA Civil Violation.**

**Limits of Liability - HIPAA Civil Monetary Penalty**: The total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for each **HIPAA Civil Violation** first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to Each **HIPAA Civil Violation**. Subject to the foregoing, the total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for all **HIPAA Civil Violations** first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to all **HIPAA Civil Violations**.

    **1.**  $250,000    Each **HIPAA Civil Violation**

    **2.**  $250,000    All **HIPAA Civil Violations**

**Multiple Insureds, HIPAA Civil Violations and Protected Health Information Records Released:**  The inclusion herein of more than one Insured in any HIPAA Civil Violation shall not operate to increase the **Limits of Liability - HIPAA Civil Monetary Penalty**. More than one **HIPAA Civil Violation** arising out of a single release of protected health information or a series of related releases of protected health information shall be considered a single **HIPAA Civil Violation**. All such **HIPAA Civil Violations**, whenever made, shall be treated as a single **HIPAA Civil Violation**. Such single **HIPAA Civil Violation**, whenever made, shall be deemed to be first made on the date on which the earliest **HIPAA Civil Violation** arising out of such release of protected health information is made.

The **Insured** shall give the Company written notice as stated in the Declarations within ten (10) days of the Insured receiving a notice of **HIPAA Civil Violation** and in any event such written notice shall be provided prior to the **Insured** incurring any legal fees or legal expenses related to such matter.

The Company shall have the right and duty to defend and investigate any **HIPAA Civil Violation** to which coverage under this Coverage Part applies. The Company may make such investigation and settlement of any **HIPAA Civil Violation** as it deems expedient. Legal Expenses incurred in defending and investigating a **HIPAA Civil Violation** shall be a part of and shall not be in addition to the **Limits of Liability - HIPAA Civil Monetary Penalty**. Such Legal Expenses shall reduce the **Limits of Liability - HIPAA Civil Monetary Penalty**. The Company shall have no obligation to pay any **Civil Monetary Penalty** or to defend or to continue to defend any **HIPAA Civil Violation** or to pay Legal Expenses for **HIPAA Civil Violations** after the **Limits of Liability - HIPAA Civil Monetary Penalty** have been exhausted. Payments pursuant to this Section shall be a part of, and not in addition to, the Limits of Liability stated in the Declarations.

This coverage does not apply to any **HIPAA Civil Violation** based upon, arising out of, or in any way involving:

1. any **HIPAA Civil Violation** or any claim, fact, circumstance, situation or incident which has or may result in a **HIPAA Civil Violation** that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

2. any **HIPAA Civil Violation**, whenever occurring, which is logically or causally connected to another **HIPAA Civil Violation** by reason of any common fact, circumstance, situation, event or transaction that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

3. any litigation, demand, investigation, administrative or regulatory proceeding or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the inception date of this policy, or the same or any substantially similar **HIPAA Civil Violation** or any fact, circumstance, situation or incident underlying or alleged therein.

For the purposes of this endorsement, the following terms are defined as follows:

1. **Civil Monetary Penalty** means a civil monetary penalty imposed by the Secretary of the United States Department of Health and Human Services, or his or her designee, under 42 U.S.C. §1320d-5 and 45 C.F.R. §160.404.

2. **Health Insurance Portability and Accountability Act ("HIPAA")** means the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

3. **HIPAA Civil Violation** means a notice received by the Insured for failure to comply with the **HIPAA** Standards for Privacy of Individually Identified Health Information (Privacy Rule) which protects the privacy of individual health information, including maintaining the confidentiality of information regarding medical services and limiting the release or use of such information in conformance with state or federal law, including any allegation that the Insured was negligent in hiring, training or supervising any insured person who failed or is alleged to have failed to comply with the Privacy Rule.

4. **Legal Expenses** means reasonable and necessary amounts incurred by the Company or by the **Insured** with the prior written consent of the Company in the defense of that portion of any **HIPAA Civil Violation** for which coverage is afforded under this Coverage Part, including costs of investigation and costs of appeals; provided, however, Legal Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

# ADDITIONAL INSURED ENDORSEMENT – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Definition I. the Insured is amended by the addition of the following:

    Whenever used in this policy, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured** means, whenever used in this endorsement, the following:

    County of Fresno, its officers, agents and employees, individually and collectively;
    County of Tulare (including its officers, agents, employees and volunteers); and
    County of Orange, its elected and appointed officials, officers, agents and employees.

3. Coverage provided to any Additional Insured as defined herein shall apply solely with respect to any Claim or Claim Expenses arising from Professional Services rendered by the Named Insured specified in Item 1. of the Declarations

4. Section Defense, Settlements and Claim Expenses is amended by the addition of the following:

    The Company's obligation to provide defense shall not be severable with respect to the Named Insured and the Additional Insured.

5. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or by any applicable professional code of conduct.

6. This insurance shall be excess and non-contributory insurance over any other insurance afforded to the Additional Insured.

# CRISIS MANAGEMENT COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE**
   **COVERAGE**
**ALLIED HEALTHCARE GENERAL LIABILITY COVERAGE PART – CLAIMS MADE**
   **COVERAGE**
**ALLIED HEALTHCARE GENERAL LIABILITY COVERAGE PART – OCCURRENCE**
   **COVERAGE**

In consideration of the premium paid, it is hereby understood and agreed that this Endorsement is added to the Policy.  The following conditions apply only to this Endorsement:

## DECLARATIONS

**LIMITS OF LIABILITY:**

     Evacuation Expense:
          $25,000 for all Evacuation Expenses under this Endorsement.

     Disinfection Expense:
          $25,000 for all Disinfection Expenses under this Endorsement.

     Public Relations Expense:
          $25,000 for all Public Relations Expenses under this Endorsement.

**DEDUCTIBLE:**

     Evacuation Expense:
          $5,000 per Evacuation.

     Disinfection Expense:
          $5,000 per Disinfection Event.

     Public Relations Expense:
          $5,000 per Public Relations Event.

**SECTION I – COVERAGES**

**COVERAGE A – EVACUATION EXPENSE REIMBURSEMENT**

**Insuring Agreement**

**1.**     The Company will reimburse you for **Evacuation Expense**.  The amount the Company will reimburse to you is limited as described in Section **II** – Reimbursement Limit.

**2.**     This insurance applies only if:
        **a.**   The **Evacuation** occurs within the **Coverage Territory**;

**b.** The **Evacuation** occurs during the **Policy Period** and is first reported in writing to the Company by the Named Insured during the **Policy Period** or within sixty (60) days after the expiration of the **Policy Period**; and

**c.** No other insurance providing **Evacuation Expense** has been issued to you, whether that other insurance is primary, excess, contingent or on any other basis.

## COVERAGE B - DISINFECTION EXPENSE REIMBURSEMENT

### Insuring Agreement

**1.** The Company will reimburse you for **Disinfection Expense**. The amount the Company will reimburse to you is limited as described in Section **II** – Reimbursement Limit.

**2.** This insurance applies only if:

**a.** The **Disinfection Event** occurs within the **Coverage Territory**;

**b.** The **Disinfection Event** occurs during the **Policy Period** and is first reported in writing to the Company by the Named Insured during the **Policy Period** or within sixty (60) days after the expiration of the **Policy Period**; and

**c.** No other insurance providing **Disinfection Expense** has been issued to you, whether that other insurance is primary, excess, contingent or on any other basis.

## COVERAGE C – PUBLIC RELATIONS EXPENSE REIMBURSEMENT

### Insuring Agreement

**1.** The Company will reimburse you for **Public Relations Expense**. The amount the Company will reimburse to you is limited as described in Section **II** – Reimbursement Limit.

**2.** This insurance applies only if:

**a.** The **Public Relations Event** occurs within the **Coverage Territory**;

**b.** The **Public Relations Event** occurs during the **Policy Period** and is first reported in writing to the Company by the Named Insured during the **Policy Period** or within sixty (60) days after the expiration of the **Policy Period**; and

**c.** No other insurance providing **Public Relations Expense** has been issued to you, whether that other insurance is primary, excess, contingent or on any other basis.

## SECTION II – REIMBURSEMENT LIMIT

**1.** The Evacuation Expense Reimbursement Limit shown in the Schedule above is the most The Company will reimburse to you for all **Evacuation Expense** during the **Policy Period**. The Company will only reimburse **Evacuation Expense** in excess of the Self Insured Retention amount shown in the Schedule above per **Evacuation**.

**2.** The Disinfection Expense Reimbursement Limit shown in the Schedule above is the most The Company will reimburse to you for all **Disinfection Expense** during the **Policy Period**. The Company will only reimburse **Disinfection Expense** in excess of the Self Insured Retention amount shown in the Schedule above per **Disinfection Event**.

**3.** The Public Relations Expense Reimbursement Limit shown in the Schedule above is the most The Company will reimburse to you for all **Public Relations Expense** during the **Policy Period**. The Company will only reimburse **Public Relations Expense** in excess of the Self Insured Retention amount shown in the Schedule above per **Public Relations Event**.

The Reimbursement Limit and Self Insured Retention amounts apply separately to Coverage **A**, Coverage **B** and Coverage **C** shown under Section **I** – COVERAGES above.

**SECTION III – CONDITIONS**

Solely with respect to this Coverage Form, Paragraph **A.** of SECTION **III** – **CONDITIONS** of the COMMON POLICY PROVISIONS is replaced by the following:

**Assistance and Cooperation of The Insured**

**1.** You shall give prompt written notice to the Company of:

    **a.** The time, date and place of the **Evacuation Expense**, **Disinfection Expense**, or **Public Relations Expense**;

    **b.** A description of the **Evacuation Expense**, **Disinfection Expense**, or **Public Relations Expense**;

    **c.** How, when or where you first became aware of the **Evacuation Expense**, **Disinfection Expense**, or **Public Relations Expense**; and

    **d.** Documented proof of the **Evacuation Expense**, **Disinfection Expense**, or **Public Relations Expense**.

**2.** You shall assist and cooperate with the Company by authorizing release of records and other information pertinent to the reimbursement of **Evacuation Expense**, **Disinfection Expense** or **Public Relations Expense**.

**SECTION IV – ADDITIONAL DEFINITIONS**

Solely with respect to this Coverage Form, the following additional definitions apply:

**1.** **Disinfection Event** means any case or series of cases of hospital-borne infectious bacteria, virus or disease that requires reporting of such case or series of cases to any local, state or federal governmental or healthcare oversight agency or entity.

**2.** **Disinfection Expense** means reasonable and necessary fees and costs incurred by you to clean and disinfect your facility as a result of any **Disinfection Event**. **Disinfection Expense** includes costs to:

    **a.** Engage third party providers of cleaning/disinfection services; and

    **b.** Notify patients, visitors or other potentially affected persons.

**Disinfection Expense** does not include any salaries, overhead, fees, loss of earnings or benefit expenses incurred by you, or cost of cleaning / disinfecting supplies or products.

3.  **Evacuation** means:

    **a.**  The removal of twenty-five (25) percent or more of your patients away from your premises to any other premises as a result of any natural or man-made occurrence that, in your management's reasonable judgment, causes or could potentially cause such premises to be unsafe for such patients; and

    **b.**  Solely with respect to your patients as described in **3.a.** above, the return of such patients to your premises when such premises are deemed safe for occupancy.

4.  **Evacuation Expense** means reasonable and necessary costs incurred by you in connection with an **Evacuation**, including the costs of transporting and lodging patients. **Evacuation Expense** does not include any salaries, overhead, fees, loss of earnings or benefit expenses incurred by you.

5.  **Public Relations Event** means:

    **a.**  Any event in which you have paid any:
    **(1)**  **Evacuation Expense**; or

    **(2)**  **Disinfection Expense**; or

    **b.**  Any event that results in the publication or broadcast of information which can reasonably be expected to damage your reputation if such event is caused by:

    **(1)**  An actual or alleged act, error or omission in the furnishing or failure to furnish **Professional Medical Services**;

    **(2)**  An **Abusive Act**; or

    **(3)**  Workplace violence or threat of workplace violence.

6.  **Public Relations Expense** means reasonable and necessary fees and costs incurred by you in the investigation and mitigation of a **Public Relations Event** including the costs;

    **a.**  Of attorneys, experts and consultants, including third-party media consultants and security consultants;

    **b.**  To notify third parties directly affected by such **Public Relations Event**;

    **c.**  Incurred in the management of public relations with respect to such **Public Relations Event**; and

    **d.**  Employee counseling expenses related to such **Public Relations Event**.

**Public Relations Expense** does not include:

**(1)**  Any salaries, overhead, fees, loss of earnings or benefit expenses incurred by you; or

**(2)**  **Disinfection Expense** or **Evacuation Expense**.

# AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**

Section Exclusions is amended by the addition of the following:

any Claim based upon or arising out of any violation of:

**(a)** the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

**(b)** the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

**(c)** any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

# AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES - GL

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

1. Section Definitions is amended by the addition of the following:

   **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

2. Section Definitions, Property Damage, is deleted and replaced as follows:

   **Property Damage** means:

   1. physical injury to or destruction of tangible property, including consequential loss of use thereof; or

   2. loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence;

      provided, however, tangible property shall not include Electronic Data.

3. Section Exclusions A. is amended by the addition of the following:

   any Claim based upon or arising out of any violation of:

   **(a)** the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

   **(b)** the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

   **(c)** any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

# PERSONAL PROPERTY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that this Endorsement is added to the Policy.

DECLARATIONS

**PERSONAL PROPERTY LIMITS OF LIABILITY:**

|   |   |
|---|---|
| $500 | Per Claim |
| $5,000 | Aggregate |

The **PERSONAL PROPERTY LIMITS OF LIABILITY** are included within, and are not in addition to, the **General Liability Coverage Part Aggregate Limit** set forth in the Declarations**.**

I.   The **GENERAL LIABILITY COVERAGE PART** is amended as follows:

  A.   **EXCLUSIONS,** section **B**., paragraph 9 (iii), any **Claim** based upon or arising out of Property Damage to: personal property in the care, custody or control of the **Insured**, is deleted in its entirety and replaced by the following:

  With respect to Coverage A., this Coverage part does not apply to:

  9. any **Claim** based upon or arising out of **Property Damage** to:

  (iii) personal property in the care, custody or control of the **Insured**, except that this exclusion does not apply to a "claim" by or on behalf of a patient whose property in the care, custody or control of the **Insured** is lost or stolen.

  B.   Solely with respect to coverage under this endorsement, **DEFINITIONS** of this Coverage Part is amended as follows:

  **F**.   **Claim** means a suit, a written or oral demand, or notification to the **Insured** of lost or stolen patient personal property in the care, custody or control of the **Insured**.

  **Q**.   **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, and includes an event or incident of loss or theft of a patient's personal property in the care, custody or control of the insured.

  **U**.   **Professional Services** means those services described in Item 8. of the Declarations, but do not include the care or storage of patients' personal property or belongings by the **Insured**.

II.   Solely with respect to coverage under this endorsement, the **PROFESSIONAL LIABILITY COVERAGE PART** is amended as follows:

  Section **Definitions, O. Professional Services,** is deleted and replaced with the following:

NAV-HCP-160 (08/14)

**O.**  **Professional Services** means those services described in Item. 8. of the Declarations, but do not include the care or storage of patients' personal property or belongings by the **Insured**.

All other terms and conditions of the Policy remain unchanged.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0, and does not include any charges for the portion of losses covered by the United States government under the Act.

YOU SHOULD ALSO KNOW THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE. THE PORTION OF YOUR PREMIUM ATTRIBUTABLE TO SUCH COVERAGE IS SHOWN ABOVE.

If you have any questions about this notice, please contact your agent or Broker.

NAV-ML-TERRA (02/15)

Contains copyrighted material of the National Association of Insurance Commissioners



## PRODUCER COMPENSATION NOTICE

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1

**LEARN MORE.**
The Hartford's deep specialization can help create customized
solutions that better protect you from the complex risks you face.

**TheHartford.com/globalspecialty**



Business Insurance
Employee Benefits
Auto
Home

22-GS-856077B © January 2022 The Hartford

**Maphet, Melissa (MLC GS Billing Premium Audit)**

| | |
|---|---|
| **From:** | Maphet, Melissa (MLC GS Billing Premium Audit) |
| **Sent:** | Thursday, June 23, 2022 9:12 AM |
| **To:** | Goss, Adam |
| **Subject:** | Averhealth Holdings, LLC - Primary Policy - CE22HCPZ0B23MNC |
| **Attachments:** | Averhealth Holdings - Primary Policy.pdf |

Good morning Adam,

I am pleased to provide you with the attached policy documents for Averhealth Holdings, LLC - Primary Policy - CE22HCPZ0B23MNC. Please review and let us know if you have any questions.

Thank you and have a great day!!

**Melissa Maphet**
audra.maphet@thehartford.com
Account Manager – Professional Liability
Hartford Global Specialty
Phone: 312-572-7408



**Please send your Allied Health request to the following:**
New/Renewal Submissions : healthcaremidmarketpl@thehartford.com
Midterm Change Requests: globalspecialtyflendorsements@thehartford.com
Loss Run Requests: IRLossruns@thehartford.com