# Exhibit C

2022 POLICY



THANK YOU FOR BEING
OUR POLICYHOLDER

The Buck's Got Your Back®



THE
HARTFORD

| **Allied Healthcare Umbrella Liability Policy Declarations**<br><br>**NAV-HCP-UMB-DEC (01-21)** | **Navigators** |
|---|---|

**Policy Number :**    **CE22HCPZ0B4TLNC**
**Producer Number :**  **LOCK0236**
**New/Renewal :**      **NEW**

**Insuring Company:**   **Navigators Specialty Insurance Co.**
One Penn Plaza
New York, NY 10119

**Producer:**   **Lockton Companies LLC**
751 Arbor Way, Ste 250
Blue Bell, PA 19422

1. **Named Insured:**   **Averhealth Holdings, LLC**
   **Address:**         **2916 W. Marshall St. Ste A**
                     **Richmond, VA 23230**

**Business Type: Substance Abuse Testing**

2. **Policy Period:**    From:  May 1, 2022        to  May 1, 2023
                    (At 12:01 A.M. Standard Time at your mailing address shown above.)

3. **Limits of Insurance:**
     Each Occurrence or Event           $5,000,000
     General Aggregate                  $5,000,000
     Retained Limit                       $0

4. **Schedule of Underlying Insurance:**

| Type | Carrier | Policy # | Policy Term | Limits |
|---|---|---|---|---|
| Professional Liability | Navigators Specialty Insurance Company | CE22HCPZ0B23MNC | 5/1/22 - 5/1/23 | $1,000,000 Each Claim / $3,000,000 Aggregate |
| General Liability | Navigators Specialty Insurance Company | CE22HCPZ0B23MNC | 5/1/22 - 5/1/23 | $1,000,000 Each Claim/ $3,000,000 Aggregate |
| Employee Benefits Liability | | CE22HCPZ0B23MNC | 5/1/22 - 5/1/23 | $1,000,000 Each Claim/ $3,000,000 Aggregate |
| Employers Liability | The Hartford Business Service Center | 42 WE AS0U7N | 5/1/22 - 5/1/23 | Bodily Injury by Accident: $1,000,000 each accident<br>Bodily Injury by Disease: $1,000,000 policy limit<br>Bodily Injury by Disease: $1,000,000 each employee |
| Auto | Trumbull Insurance Company / Hartford Insurance Company | 42 UEN AF1014 | 5/1/22 - 5/1/23 | $1,000,000 CSL |

5. **Retroactive Date:**  **First $1,000,000 – December 7, 2010**
                        **$4,000,000 xs of $1,000,000 – May 1, 2019**

Allied Healthcare Umbrella Liability Policy Declarations

**6.  Policy Premium**  

**7.  NOTICE OF ELECTION:**
Recipient of Notice of Insured's Cancellation:

Navigators Management Company, Inc.
One Hartford Plaza
Hartford, CT 01655

**8.  Endorsements Attached to this Policy at Inception**

| | |
|---|---|
| NAV-HCP-UMB-001 (12/20) | Umbrella Liability Policy |
| NAV-HCP-UMB-DEC (01/21) | Umbrella Liability Dec Page |
| 1. NAV-HCP-PHN-200 (04/17) | Claims Reporting Procedure |
| 2. NAV-HCP-UMB-5041 (10/16) | Exclusion - Cyber Injury |
| 3. NAV-HCP-UMB-321 (10/16) | Exclusion - Rejected Coverage |
| 4. NAV-ML-002 (11/12) | OFAC Endorsement |
| 5. NAV-HCP-122 (04/15) | Certified Acts of Terrorism Endorsement |
| 6. NAV-HCP-101 (01/14) | 25% Minimum Earned Premium Endorsement |
| 7. NAV-HCP-100 (01/14) | Nuclear Energy Liability Exclusion (Broad Form) |
| 8. NAV-HCP-104 (01/14) | Addition of Exclusion(s) |
| 9. NAV-ML-TERRD (01/15) | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |

**9.  SERVICE OF SUIT**

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event suit is instituted against the Company relative to this contract, the Company will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon the Company through the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute.   The Company hereby designates the General Counsel of the Company, located at 400 Atlantic Street, 8th Floor, Stamford, CT 06901, as the person to whom the Superintendent, Commissioner or Director of Insurance designated by the appropriate state, a registered agent designated by and for the Company for the relevant state or other person specified for that purpose in an applicable state statute is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing service of process.

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.**

| | |
|---|---|
| [Lisa Levin] | [Douglas Elliot] |
| Secretary | President |

Allied Healthcare Umbrella Liability Policy Declarations

# Allied Healthcare Umbrella Liability Policy

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured. The words "we," "us" and "our" refer to the company providing this insurance. The word "insured" means any other person or organization qualifying as such under SECTION II – WHO IS AN INSURED.

Other words and phrases that appear in quotations in this policy have special meanings. Refer to SECTION V - DEFINITIONS.

SECTION I – COVERAGE

1.  Insuring Agreement

    A.  Excess Liability

        1.  We will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" to which this insurance applies.  This insurance applies only if:

            a.  the "loss" is caused by an "event" that takes place in the coverage territory; and

            b.  the "controlling underlying insurance" applies to the "loss."

        2.  If an aggregate limit of "controlling underlying insurance" is exhausted by the payment of judgments or settlements to which this insurance applies, or would have applied but for the amount of the damages, this insurance will apply in place of the "controlling underlying insurance" until we have paid our applicable Limits of Insurance.

        3.  When paragraph 2. above applies, ending the "controlling underlying insurance" obligations to investigate and settle claims or defend suits against the insured, we have the right and duty to investigate claims and defend suits which seek damages to which this insurance applies. Our right and duty to defend end when we have paid our applicable Limits of Insurance.

        4.  When paragraph 2. above does not apply, we have the right, but not the duty, to participate in the investigation or settlement of any claim or the defense of any suit against any insured.

        5.  We have the right, at our discretion, to settle any claim to which this insurance applies.

        6.  The amount we pay is limited. See SECTION III – LIMITS OF INSURANCE.

2. Exclusions

The EXCLUSIONS sections of the "controlling underlying insurance" are made part of this policy. If an inconsistency or contradiction exists between an Exclusion of this policy and an Exclusion of the "controlling underlying insurance" the Exclusion of this policy will apply.

However, in no case will coverage be excluded by the "controlling underlying insurance" and not excluded by this policy.

This insurance does not apply to any liability:

1. to which "controlling underlying insurance" does not apply;

2. for which coverage is provided by "controlling underlying insurance" at limits less than the limits of insurance applicable to other coverage provided by the "controlling underlying insurance" and less than "underlying limits;"

3. for damage to property you own, rent or occupy, including any costs or expenses incurred by you or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including the prevention of injury to a person or damage to another's property;

4. arising out of any "aircraft products;"

5. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos;"

6. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "fungi" or bacteria;

7. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "silica" or "silica related dust;"

8. arising out of any "employment practices" of any insured;

9. arising out of:

    a. war, including undeclared or civil war;

    b. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

10. imposed under:

    a. an uninsured or underinsured motorist, uninsured or underinsured boater, Medical Payments, Personal Injury Protection, No-Fault or any similar law;

    b. a workers compensation, disability benefits, unemployment compensation or any similar law;

    c. the Employee Retirement Income Security Act of 1974, any amendments thereto or any similar law.

SECTION II – WHO IS AN INSURED

The WHO IS AN INSURED section of the "controlling underlying insurance" is made part of this policy. Any person or organization that is an insured in "controlling underlying insurance" is an insured in this policy to the same extent.

SECTION III – LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

1.  The General Aggregate Limit is the most we will pay for the sum of all damages to which this insurance applies

3.  The Each Occurrence or Event Limit is the most we will pay for all damages that arise out of any one "event."

SECTION IV – CONDITIONS

The CONDITIONS sections of the "controlling underlying insurance" are made part of this policy. If an inconsistency or contradiction exists between the Conditions of this policy and the Conditions of the "controlling underlying insurance," the Conditions of this policy will apply.

1.  Appeals
    At our discretion we may appeal any judgment which would result in a payment under this policy. When we do appeal, we will pay all costs associated with the appeal in addition to the Limits of Insurance. Any such appeal will not increase our Limits of Insurance.

2.  Bankruptcy or Insolvency
    Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this policy. Bankruptcy or insolvency of any company providing "controlling underlying insurance" will not reduce the "underlying limits" or increase our obligations under this policy. We will not be required to drop down or replace "controlling underlying insurance."

3.  Cancellation
    a.  The first Named Insured may cancel this policy at any time by providing us advanced written notice of the cancellation date.

    b.  We may cancel this policy at any time by providing the first Named Insured written notice of cancellation:

        i.  at least 10 days in advance if we cancel for non-payment of premium; or

        ii.  at least 30 days in advance if we cancel for any other reason:

c.  If the "controlling underlying insurance" is cancelled for any reason, this policy is also cancelled. Reinstatement of the "controlling underlying insurance" does not reinstate this policy unless reinstatement is endorsed hereon.

Return premium, if any, will be calculated per Condition 11. Premium. Proof of mailing will be proof of notice.

4.  Non-Renewal

a.  We are not obligated to renew this policy. However, should we decide not to renew, we will provide the first Named Insured written notice of our decision at least 30 days prior to the expiration date shown in the Declarations.

b.  We will not restrict the terms or increase premium of this policy at renewal unless we have given the first Named Insured at least 30 days advanced notice of any such changes. However, no notice will be provided or required if a restriction in this policy results from a restriction applicable to "controlling underlying insurance."

c.  The first Named Insured may non-renew this policy by:

i.  providing advance written notice to us;

ii.  rejecting our offer to renew; or

iii.  failing to reply to our offer to renew.

Proof of mailing will be proof of notice.

5.  Changes
This policy contains all of the agreements between you and us. This policy may only be changed by endorsements we issue.

6.  Duties When There is an "Event," Claim or Suit

a.  You must see to it that we and any other insurers who could provide coverage are notified as soon as practicable of any "event" which may be reasonably expected to result in a claim under this policy. To the extent possible, notice should include:

i.  how, when and where the "event" took place;

ii.  the names and addresses of any injured persons and witnesses; and

iii.  the nature and location of any injury or damage arising out of the "event."

b.  If a claim is made or suit is brought against any insured which may be reasonably expected to result in a claim under this policy, you must:

i.  immediately record the specifics of the claim or suit and the date received; and

ii.  notify us, and any other insurers who could provide coverage, as soon as practicable.

c.  You and any other involved insured must:

i.  immediately send us, and any other insurers who could provide coverage, copies of any demands, notices, summonses or legal papers received in connection with a claim or suit which may be reasonably expected to result in a claim under this policy;

ii.  authorize us to obtain records and other information;

iii.  cooperate with us in the investigation or settlement of the claim, issues relating to coverage under this policy or defense against the suit; and

iv.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of the injury or damage to which this insurance may apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than first aid, without our consent.

Notice to us may be sent to our address shown in the Declarations.

7. Legal Action Against Us
No person or organization has a right under this insurance:

    a. to join us as a party or otherwise bring us into a suit asking for damages from an insured; or

    b. to sue us on this insurance unless all of its terms have been fully complied with.

8. Maintenance of Controlling Underlying Insurance
During the "policy period" you must maintain "controlling underlying insurance" with "underlying limits" at least equal to the amounts shown in the Declarations. The "underlying limits" must be unimpaired at the beginning of this "policy period." If you fail to maintain the "controlling underlying insurance" this policy will be invalid. If you fail to maintain "underlying limits," we will only be liable to the extent we would have been liable had you maintained the "underlying limits." Reduction of "underlying limits" by the payment of judgments or settlements for "loss" to which this insurance applies, or would have applied but for the amount of the damages, will not be considered a failure to maintain "underlying limits."

9. Other Insurance
This insurance is excess over any insurance available to the insured except insurance purchased specifically to apply in excess of this policy.

10. Payment of Damages
When the amount of damages payable under this policy has been determined by final judgment or a written settlement agreement between the claimant and us, we will pay that amount, up to our applicable Limits of Insurance, after the "controlling underlying insurance" or the insured has paid the full amount of the "underlying limits."

11. Premium
The Premium shown in the Declarations is the premium for the coverage we provide for the "policy period." The first Named Insured is responsible for the payment of all premiums under this policy. If this policy is cancelled prior to its expiration date return premium will be calculated as follows:

    a. if cancelled by us:
        [{(Premium) – (Minimum Earned Premium)} x (Pro Rata factor)]

    b. if cancelled by you:
        [{(Premium) – (Minimum Earned Premium)} x {(Pro Rata factor) x (.90)}].

12. Separation of Insureds
Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    a. as if each Named Insured were the only Named Insured; and

    b. separately to each insured against whom claim is made or suit is brought.

13. Transfer of Rights of Recovery Against Others
If an insured has rights to recover all or part of any payment we have made under this insurance, the insured must preserve those rights and, at our request, pursue or transfer those rights to us. The insured must do nothing after an "event" to impair them.

| NAV-HCP-UMB-001 (12/20) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 5 of 7 |
|---|---|---|

14. Reformation of Underlying
    If the "controlling underlying insurance" is reformed after an "event" to provide coverage for a "loss," the terms of such reformation do not apply to this policy.

15. When we Defend
    When we have a duty to defend an insured, the insured will cooperate with us in the transfer of the defense to counsel of our choosing.  If the law of the governing jurisdiction permits an insured to select their own counsel to be paid for by us, we shall only be liable for the reasonable and necessary defense costs of one law firm per insured at rates customarily paid by us for the defense of similar claims in the jurisdiction where the claim is pending.

16. Claims outside the U.S.A, it's Territories, Possessions or Canada
    When we have the duty to defend an insured and are prevented by law or otherwise from doing so, we will reimburse the insured for any reasonable and necessary expenses incurred in the defense of a suit to which this insurance applies.  If the insured becomes legally obligated to pay damages to which this insurance applies and we are prevented by law from paying such damages on behalf of the insured, we will reimburse the insured, in U.S currency at the prevailing exchange rate at the time the damages were paid, for such damages.

SECTION V – DEFINITIONS

The DEFINITIONS sections of the "controlling underlying insurance" are made part of this policy, and apply to words or phrases used in this policy provided always that words or phrases in quotations in this policy will have the meaning given them in this policy.

"Aircraft products" means:

    a.  an aircraft;

    b.  ground control or support equipment; or

    c.  any article, component or device made, sold, licensed, handled or distributed by any insured that is used to achieve, control or maintain flight or landing of an aircraft.

"Asbestos" means the mineral in any form.

"Controlling underlying insurance" means the policy listed in the Schedule of Underlying Insurance shown in the Declarations, or its renewal or replacement, which applies to the "loss," or would have applied but for:

    a.  an exclusion in that policy; or

    b.  the exhaustion or erosion of an aggregate limit of insurance;

If more than one policy is listed in the Schedule, the "controlling underlying insurance" is the policy which applies to the "loss" or would have applied but for the reasons a. or b. listed above.

"Defense expenses" means expenses we incur to investigate a claim or defend a suit. Defense expenses include interest which accrues on our portion of a judgment, after entry of that judgment and after the insured or any underlying insurer has paid the full amount of their portion of the judgment but before we have paid, offered to pay or deposited in the court the part of the judgment that is within our applicable Limits of Insurance.

"Employment practices" means:

---

a. dismissal, discharge or termination of employment, whether actual, constructive or retaliatory;

b. failure or refusal to hire or promote;

c. discipline, demotion, coercion or retaliatory treatment;

d. failure to grant tenure;

e. negligent employment evaluation;

f. sexual or other workplace harassment, including quid pro quo and hostile work environment;

g. employment discrimination;

h. invasion of privacy, violation of employment related civil rights, employment related libel, slander or defamation;

i. creating or enforcing or failing to create or enforce employment related policies or procedures; or

j. actual or alleged violations of the Family and Medical Leave Act of 1993 or its amendments.

"Event" means an accident, incident, occurrence, offense, wrongful act or other "loss" causing "event" defined by and to which the "controlling underlying insurance" applies.

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. But "fungi" does not include mushrooms cultivated for human consumption.

"Loss" means bodily injury, property damage, personal and advertising injury or other loss defined by and to which the "controlling underlying insurance" applies.

"Policy period" means the period of time between the effective date shown in the Declarations and the earlier of the expiration date shown in the Declarations or the expiration date shown in an endorsement to this policy.

"Silica" means silicon dioxide, occurring in crystalline, amorphous or impure forms, silica particles, silica dust or silica compounds.

"Silica related dust" means a mixture or combination of silica and other dust particles.

"Underlying limits" means the amounts shown in the Declarations as the minimum limits of insurance to be provided by "controlling underlying insurance."

| | | |
|---|---|---|
| NAV-HCP-UMB-001 (12/20) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 7 of 7 |

**Policyholder Notice**

## CLAIM REPORTING PROCEDURES

Conditions of the policy require that in the event of a claim, you notify us as soon as practicable. All claim notifications are to be reported to the New York Claims Office by electronic mail to navproclaims@navg.com.

In the alternative, claim notices may also be:

- Mailed to the New York Claims Office at:

    Professional Liability Claims Department
    NAVIGATORS GROUP, INC.
    One Penn Plaza, New York, NY 10119

All claims notifications must contain current contact information for the insured and claimant(s) as well as a detailed description of the loss.

If the insured files a claim with the agent, it is the agent's responsibility to forward the claim to the New York Claims Office.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INJURY

A.  The following is added to SECTION I – COVERAGE, 2. Exclusions:

This insurance does not apply to:

1.  any liability arising out of "cyber injury;" or

2.  any loss, cost or expense arising out of any:

    a.  request, demand, order or statutory or regulatory requirement that any insured or others monitor, notify or in any way respond to an actual or alleged "cyber injury;"
    b.  claim or suit by or on behalf of a governmental authority for damages because of monitoring, notifying or in any way responding to a "cyber injury;"

incurred by you or others.

B.  The following are added to SECTION V – DEFINITIONS:

1.  "Cyber injury" means any actual or suspected, intentional or unintentional breach of any data, software or hardware, wherever located, that results in:

    a.  loss; destruction; disclosure; disruption; inspection; modification; recording; release; review; or use of "personal information;"
    b.  inability to access any website or any electronic system;
    c.  release, introduction or facilitation of any "malicious code;"
    d.  forensic or investigative expenses;
    e.  extortion or terrorism acts or threats;
    f.  monitoring or notification costs or expenses;
    g.  crisis management or public relations expenses;
    h.  data or system recovery, repair, replacement or restoration expenses; or
    i.  business interruption expenses.

2.  "Malicious code" includes, but is not limited to any virus, Trojan horse, worm, spyware, logic bomb, adware, malware or other similar software program.

3.  "Personal information" means any personal, or personally, identifiable, or identifying, information, as defined by federal, state or local laws, statutes or regulations.

All other terms and conditions of the policy remain unchanged.

**ALLIED HEALTHCARE UMBRELLA LIABILITY POLICY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - REJECTED COVERAGE

This endorsement modifies insurance provided under the following:

ALLIED HEALTHCARE UMBRELLA LIABILITY POLICY

A.      The following is added to SECTION I - COVERAGE, 2. Exclusions:

This insurance does not apply to any liability:

1.      for which coverage was available on the "controlling underlying insurance" but which you did not purchase.

All other terms of the policy remain unchanged.

# OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

# CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART**
**ALLIED HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY**

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.      The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.      The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

# 25% MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
 **OPERATIONS LIABILITY) COVERAGE PART**
**ALLIED HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY**

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of Premium Information of the total premium.

# NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
  **OPERATIONS LIABILITY) COVERAGE PART**

This exclusion modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

    A.  Under any Liability Coverage, to **Bodily Injury** or **Property Damage**

    (1)  with respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **Bodily Injury** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if

    (1)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

    (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

    (3)  the **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **Property Damage** to such nuclear facility and any property thereat.

2. **As used in this exclusion:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property Damage**" includes all forms of radioactive contamination of property.

# ADDITION OF EXCLUSION(S)

This endorsement modifies insurance provided under the following:

**ALLIED HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**
**ALLIED HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART**
**ALLIED HEALTHCARE GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED**
    **OPERATIONS LIABILITY) COVERAGE PART**
**ALLIED HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY**

In consideration of the premium paid, it is hereby understood and agreed that the EXCLUSIONS section is amended by the addition of the following:

> **This policy does not apply:**

To any Claims, Expenses or Damages arising from any class action(s) or class action-related matters; or to the defense of any class action(s).

### POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0, and does not include any charges for the portion of losses covered by the United States government under the Act.

YOU SHOULD ALSO KNOW THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE. THE PORTION OF YOUR PREMIUM ATTRIBUTABLE TO SUCH COVERAGE IS SHOWN ABOVE.

If you have any questions about this notice, please contact your agent or Broker.

**LEARN MORE.**

The Hartford's deep specialization can help create customized solutions that better protect you from the complex risks you face.

**TheHartford.com/globalspecialty**



Business Insurance
Employee Benefits
Auto
Home

22-GS-8560778 1ᵀ January 2022 The Hartford