IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) 1:24-cv-932 (LMB/WBP) |
| v. | ) ) |
| AVERTEST, LLC, et al., | ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment in a civil action to determine which of two insurance companies—plaintiff Navigators Specialty Insurance Company ("Navigators" or "plaintiff") or defendant Columbia Casualty Company ("Columbia")—should provide coverage for a lawsuit currently pending against defendant Avertest, LLC ("Avertest" or "Averhealth"). The parties agree that the motions should be resolved on the existing record without a trial. Oral argument has been held, and for the reasons discussed below, plaintiff's Motion for Summary Judgment will be denied, Columbia's Motion for Summary Judgment will be granted, and Avertest's Motion for Summary Judgment will be granted.

## I. BACKGROUND

There are no facts in dispute. Averhealth is a company that conducts laboratory testing of biological samples, including hair and urine, for the presence of, among other substances, illegal drugs like methamphetamine and cocaine. Columbia provided professional liability insurance coverage for Averhealth on a claims-made basis between December 17, 2013 and May 1, 2022.

Navigators provided professional liability insurance coverage for Averhealth on a claims-made basis from May 1, 2022 to May 1, 2023.

### A. **Columbia Policy**

Columbia issued a claims-made primary insurance policy to Averhealth for the policy period May 1, 2020 to May 1, 2021, along with an umbrella policy for the same period, and issued another primary policy and corresponding umbrella policy for the period May 1, 2021 to May 1, 2022 ("Columbia Policy").

The Columbia Policy provided coverage for claims "first made against the insured during the policy period and reported to the insurer during the coverage relationship or any applicable extended reporting period and in accordance with the section entitled Notice of Claims and Potential Claims of the Common Conditions." [Dkt. No. 35-2] at 33. The primary policy obligated Columbia to pay up to $1 million per claim, "arising out of an act, error or omission in the rendering of professional services provided that: A) such claim is first made against the Insured during the policy period, or during the extended reporting period, if applicable, and is reported to the Insurer in accordance with" the "Notice of Claims and Potential Claims" section. Id. at 33, 43.[1] The "Notice of Claims" section stated that the "Insured, as a condition precedent to the obligations of the Insurer under this policy, must give the Insurer written notice of any claim as soon as possible and during the coverage relationship. . . . Insured may have up to, but not to exceed, 30 days after the termination of the coverage relationship to report a claim." Id. at 13. The Notice of Potential Claims section stated that "any claim, whenever made, that arises out of such reported act, error or omission or such injury, occurrence or offense shall be deemed

---

[1] Columbia's total liability under the primary policy was $3 million, and the umbrella policy provided up to $5 million of additional coverage. The Navigators primary and umbrella policies had the same per claim limit and total policy limit.

2

to have been made at the time such written notice of the potential claim was first given to the Insurer." Id.

Under the "Limits of Insurance" part, the Columbia Policy contained a "Related Claims" provision, which provided that "[a]ll related claims, whenever made, shall be considered a single claim first made during the policy period in which the earliest claim was first made." [Dkt. No. 35-2] at 35. A "related claim" was defined as "all claims arising out of a single act, error or omission or arising out of related acts, errors or omissions in the rendering of professional services." Id. at 30. "[R]elated acts, errors or omissions" was defined as "all acts, errors or omissions negligently committed in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." Id.

The Columbia Policy also contained an automatic extended reporting period: "With respect to any coverage part written on a claims-made basis, the Insurer will provide the First Named Insured with an automatic, noncancelable extended reporting period starting at the termination of the policy period if the Insured has not obtained replacement coverage . . . within sixty (60) days of the termination of this policy. This automatic extended reporting period will terminate after sixty (60) days." Id. at 10. This coverage did "not apply to claims that are covered under any subsequent insurance the Insured purchases." Id.

### B. The *Gonzalez* Lawsuit

In February 2021, Justin Gonzalez and Darrell E. Tullock Jr., represented by seven Missouri lawyers, sued Averhealth in the Circuit Court for the County of St. Louis, Missouri ("Gonzalez"). The case was removed to the Eastern District of Missouri on April 6, 2021. See Gonzalez v. Avertest, LLC, No. 4:21-cv-00403-DGK (E.D. Mo. Feb. 23, 2022). The Gonzalez complaint, which was styled as a "class action," alleged that "Averhealth prioritized the speed in

3

which it returned test results to its customers over ensuring that proper testing methods were followed." [Dkt. No. 1-5] ¶¶ 2, 18. Because of Averhealth's emphasis on speed and poor "quality control practices," false positives for amphetamine, methamphetamine, benzoylecgonine, and cocaine were reported for Gonzalez and Tullock. Id. ¶¶ 20–22, 41, 46–47. As a result, Gonzalez and Tullock lost unsupervised visitation with their respective children. Id. ¶¶ 42, 51. Columbia paid for Averhealth's defense in the Gonzalez litigation, which was ultimately settled on an individual basis after the defendant's motion to dismiss was fully briefed and the parties had exchanged some discovery. [Dkt. No. 7] at 10; No. 4:21-cv-00403-DGK, [Dkt. No. 66]. The Gonzalez action was dismissed on February 23, 2022 without ever being certified as a class action. Id. at [Dkt. No. 71].

### C. The Navigators Policy

Navigators issued a claims-made primary insurance policy to Averhealth for the policy period May 1, 2022 to May 1, 2023, along with an umbrella policy for the same period. ("Navigators Policy"). [Dkt. No. 7-2]. Averhealth fully advised Navigators about the Gonzalez litigation when it applied for coverage.[2] The Navigators Policy's "Limits of Liability" section contained a "Multiple Insureds, Claims and Claimants" subsection, which provided:

> More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

---

[2] At the Court's request, Navigators has filed under seal the Averhealth application for insurance coverage, which shows that Averhealth provided Navigators an accurate description of the Gonzalez lawsuit.

4

[Dkt. No. 7-2] at 13–14. The Navigators Policy also contained Exclusion Y, which excluded from coverage "any Claim that was reported to, or covered under, another program of insurance prior to this policy." Id. at 19. The Navigators umbrella policy did not apply "[t]o any Claims, Expenses, or Damages arising from any class action(s) or class action-related matters; or to the defense of any class action(s)." [Dkt. No. 7-3] at 20.

### D. The *Foulger* Lawsuit

On May 18, 2022, eighteen days after the expiration of the Columbia Policy and during the coverage period of the Navigators Policy, Averhealth's counsel notified Columbia of an April 7 Facebook post by the user identified as "Hi D Hall," which stated that "[A] lawyer Richard S. Cornfield is filing a new federal Class Action against Averhealth and he is seeking additional Plaintiffs from any state. If anyone is seeking a lawyer to sue Averhealth for false positive drug tests and would like to join this suit you can contact the attorney . . . ." [Dkt. No. 35-3]. Averhealth's email stated that given "Mr. Cornfield's past involvement in the Gonzalez class action litigation, we wanted to advise [Columbia] of the above information to provide notice of potential litigation. . . . [We] believe that a potential new suit is being actively pursued. We will, of course, advise your office when and if a formal lawsuit is filed." Id. On June 27, 2022, Columbia replied, stating that "[t]he Potential Claim does not meet the Policy's definition of a Claim. Since the Potential Claim was reported after the Policy had expired, the Policy provides no coverage for the Potential Claim. . . . If a lawsuit is filed and it turns out that this is not a new claim, but rather a refiling of a claim that was previously reported to Columbia, such as Gonzalez, et al., v. Avertest, please advise immediately." [Dkt. No. 35-4] at 3–4.

On August 22, 2022, nearly four months after the Navigators policy went into effect, eight new plaintiffs represented by the same seven Missouri lawyers who had filed the Gonzalez complaint sued Averhealth in the Eastern District of Missouri. See Foulger v. Avertest, LLC,

5

No. 4:22-cv-878-SHL (E.D. Mo.). The Foulger complaint repeats some of the allegations in the Gonzalez complaint, such as "Averhealth prioritized the speed of its results," placing "speed and corporate growth" ahead of "proper quality control practices," [Dkt. No. 1-7] ¶ 88, resulting in plaintiffs receiving false positives for more controlled substances than were in the Gonzalez action, such as fentanyl and 6 MAM, id. ¶¶ 278–411. The damages included plaintiffs suffering consequences from the false positives, including losing or limiting custody of their children. [Dkt. No. 7] at 11. The Foulger litigation, which includes two amended complaints, references the Gonzalez litigation in several other ways. For example, in their initial disclosures under Fed. R. Civ. P. 26(a)(1), the Foulger plaintiffs included "[d]ocuments produced by Defendant in the Gonzalez case, which Defendant possesses," and also stated, "Plaintiffs are not aware of any such [insurance] agreement other than as produced by Defendant in Gonzalez." Id. [Dkt. No. 72-10] at 4–5.

On August 24, 2022, Averhealth emailed Navigators a notice of a new claim based on the Foulger complaint. [Dkt. No. 35-5]. On August 25, 2022, Averhealth notified Columbia that Foulger had been filed. [Dkt. No. 35] ¶ 15. On September 1, 2022, Columbia issued a letter to Averhealth denying coverage for the Foulger claim, explaining that because "the Policies issued to Averhealth expired on May 1, 2022, there is no coverage for this claim." [Dkt. No. 35-7] at 2.

On February 1, 2023, Averhealth tendered its defense of the Foulger litigation to Navigators. [Dkt. No. 37] at 12. By letter dated February 28, 2023, Navigators accepted Averhealth's tender "under a full reservation of all rights and defenses available under the [Navigators Primary Policy]." Id. After further investigation, Navigators tendered the defense of Averhealth to Columbia, which rejected Navigators' tender by letter on September 20, 2023. Although Navigators and Columbia have communicated about Navigators' tender since September 2023, Columbia's position has not changed. The Amended Complaint alleges that

Navigators has already spent hundreds of thousands of dollars to defend Averhealth in the Foulger litigation and expects that it will cost significantly more to litigate Foulger through trial. Id.

In its Motion for Summary Judgment, Navigators seeks judgment on all counts in the Amended Complaint. Specifically, Navigators seeks, as to Count I, a declaratory judgment that it has no duty to defend the Foulger lawsuit; as to Count II, a declaratory judgment that it has no duty to indemnify Averhealth from any judgment resulting from the Foulger lawsuit; and as to Count III, a declaratory judgment that it has a right to reimbursement from Columbia for the amount it has spent defending Averhealth against the Foulger lawsuit. In its Motion for Summary Judgment, Columbia seeks a declaratory judgment that it has no duty to reimburse Navigators for the Foulger litigation. In its Motion for Summary Judgment, Averhealth simply seeks coverage from either of the two insurance companies—specifically, it first argues that Navigators should cover the defense and any judgment in the Foulger litigation up to its policy limits because the Foulger and Gonzalez claims are not related; or, in the alternative, that because the claims in Foulger and Gonzalez are related, Columbia must cover the costs of defense and any judgment up to its policy limits.

## II. DISCUSSION

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of

law, the nonmoving party "must show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When there are cross-motions for summary judgment, a court "consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

### B. Analysis

The parties agree that Virginia law governs this dispute because both the Columbia and Navigators policies were delivered to Averhealth in Virginia. Res. Bankshares Corp. v. St. Paul Mercury Ins., 407 F.3d 631, 635–36 (4th Cir. 2005). Under well-settled Virginia law, "a court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." Blue Cross & Blue Shield of Va. v. Keller, 248 Va. 618, 626 (1994); see also P'ship Umbrella, Inc. v. Fed. Ins. Co., 260 Va. 123, 133 (2000) ("[W]e apply the well established rule that when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather, they give the language its plain and ordinary meaning and enforce the policy as written."). When there is doubt about the meaning of an insurance policy, Virginia law requires the Court to construe the language in favor of the interpretation which grants coverage, rather than the one that withholds coverage. Cont'l Cas. Co. v. AWP USA Inc., 2021 WL 1225968, at *12 (E.D. Va. Mar. 31, 2021) ("Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be

construed most[] strongly against the insurer.") (quoting TravCo Ins. Co. v. Ward, 284 Va. 547, 553 (2012)). Furthermore, "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." Ward, 284 Va. at 552.

The key dispositive issue in this litigation is whether the Foulger lawsuit is so similar to the Gonzalez lawsuit that it constitutes the same claim or a related claim.

### 1. Relatedness of *Gonzalez* and *Foulger*

On a macro level, the Gonzalez and Foulger complaints, which are attached as exhibits to the Amended Complaint, contain several similarities but also have significant differences. For example, both complaints:

- allege the same general root causes for the same types of injuries—Averhealth's alleged dedication to speed over accuracy, and use of improper analysis of samples by using "calibration curves" that relied on historical data rather than current data;

- allege similar results—false positives leading others to believe that the plaintiffs had used various controlled substances including amphetamine, methamphetamine, benzoylecgonine, and cocaine;

- allege the same type of consequences—frustrating parents' efforts to spend time with their children;

- were brought by six of the same lawyers and the same four law firms; and

- rely on similar background facts and allegations.

Moreover, the first and second amended complaints in Foulger refer to Gonzalez's "similar claims of Averhealth's improper testing procedures," the Foulger plaintiffs' initial disclosures refer to certain discovery obtained in the Gonzalez litigation, and Foulger was brought only six months after Gonzalez was dismissed.

The complaints also use overlapping language to describe the claims. For example, the introductions in both complaints allege that Averhealth failed "to employ proper quality control

9

methods" in its testing, "the results obtained from the tests" on plaintiffs "were not scientifically meaningful," and "[a]s Averhealth knows, individuals who submit to its drug tests depend on the tests being fair and accurate, and severe consequences often arise when individuals test positive for a substance."[3] [Dkt. No. 7-4] ¶¶ 1–2. Additionally, both complaints highlight many of the same representations Averhealth made in its promotional materials regarding the speed, accuracy, and quality of its testing protocols and results. Finally, both civil actions cite the same general causes of action: negligence, breach of contract, and state statutory claims of consumer fraud.

On the other hand, the complaints also contain substantial differences: (1) they were brought by different plaintiffs; (2) Foulger is not pleaded as a class action; (3) the consumer fraud statutes underlying the claims are different;[4] (4) the Foulger second amended complaint alleges deficiencies in Averhealth's collection procedures at its collection sites (e.g., employees did not sanitize scissors before cutting plaintiffs' hair) whereas the Gonzalez complaint does not reference any collection problems; and (5) the time frame of the alleged misconduct does not overlap for the lead plaintiff, Gonzalez, whose samples were collected in 2016—the alleged false positive tests in Foulger occurred from 2019 through July 7, 2022, which period overlaps with the second named plaintiff in Gonzalez.

"Courts typically find [related-claims] language to be unambiguous," and, accordingly, construe such provisions "according to [their] plain meaning." AWP USA, 2021 WL 1225968, at *13 (citing Bryan Bros. Inc. v. Cont'l Cas. Corp., 704 F. Supp. 2d 537, 543 (E.D. Va. 2010),

---

[3] These phrases were sometimes reworded slightly in the Foulger second amended complaint.

[4] Gonzalez was brought under the Missouri Merchandising Practices Act, and Foulger was brought under the Arizona Consumer Fraud Act and similar Massachusetts and Michigan statutes.

aff'd, 660 F.3d 827, 830 (4th Cir. 2011) (finding "all acts or omissions in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice, or decision" unambiguous)). In applying an insurance policy's related-claims provision, courts ask whether the two lawsuits "have a common nexus of facts and arose out of the same occurrence of wrongful acts." Id. at *14 (quoting ACE Am. Ins. Co. v. Ascend One Corp., 570 F. Supp. 2d 789, 798 (D. Md. 2008)); see also W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co., 814 F.3d 171, 177 (4th Cir. 2016) (concluding conduct alleged in two lawsuits "share[d] a common nexus of fact and [were], therefore, interrelated wrongful acts").

Courts in the Fourth Circuit have found claims to be related under various circumstances. In Stewart Engineering, Inc. v. Continental Casualty Co., the court found claims regarding two bridge collapses related because the bridges were being built under a single design contract, they shared a common project manager and project engineer, and the same design flaw caused both collapses. 751 F. App'x 392, 394–95 (4th Cir. 2018) (applying North Carolina law). In W.C. & A.N. Miller Development Co. v. Continental Casualty Co., the court concluded that two lawsuits filed four years apart against a development company alleged "interrelated wrongful acts" because the lawsuits were linked by "a multitude of common facts," including non-payment of a finder's fee; a "common transaction," which included a common contract; and "common circumstances." 814 F.3d 171, 177 (4th Cir. 2016) (applying Maryland law). In Bryan Brothers Inc. v. Continental Casualty Corp., unauthorized withdrawals from different accounts by the same employee before and during a claims-made policy period were "interrelated acts or omissions" such that the withdrawals during the policy period were not covered under that policy. 704 F. Supp. 2d 537, 543 (E.D. Va. 2010), aff'd, 660 F.3d 827 (4th Cir. 2011) (applying Virginia law).

11

By contrast, in AWP USA, the court declined to find that seven class action lawsuits were related. 2021 WL 1225968, at *14 (applying Virginia law). The class action complaints alleged improper kickback schemes from the insured travel insurance company Allianz to other companies (such as Delta and Ticketmaster) when customers bought insurance to protect their tickets. Id. at *5–8. The court held that the lawsuits were not related claims because they involved "a number of different factual circumstances, including: (1) different AGA partners; (2) different websites through which insurance was sold; (3) different named plaintiffs; ([4]) different putative classes; ([5]) different factual and legal claims; ([6]) different damages; and, ([7]) different state laws." Id. at *14. Although the court found that the claims arose out of similar business practices and the same corporate structure, it concluded that the claims were different in "time and factual specifics" because "continuing conduct alone does not carry the day." Id. at *15. The court stated that the "[defendant's] alleged kickbacks for insurance sales cannot be distilled into essentially the same misstatements []. Here, the only commonality among the Kickback Indemnification Claims is one of [defendant's] general business practices as opposed to, for example, the same underlying facts, misstatements, transactions, or events." Id.

The allegations in the Gonzalez and Foulger lawsuits are not sufficiently similar to constitute related claims under the Navigators and Columbia Policies. As in AWP USA, the factual similarities outlined above describe "general business practices," not "the same underlying facts" or transactions. 2021 WL 1225968, at *14. According to the two complaints, Averhealth had a general business practice of prioritizing speed over accuracy, including by using allegedly improper calibration curves; however, the Foulger complaint raises an additional defect, the negligent collection of samples, that was not present in Gonzalez. Each plaintiff's circumstances were different. For example, the plaintiffs did not go to the same lab facility for the collection of their samples, the samples were not collected or processed by the same

12

employees, and the circumstances at each facility were not substantially the same. The <u>Foulger</u> complaint alleges that, for one plaintiff, the person collecting the plaintiff's hair sample placed the hair on a piece of tape, which created an unreasonably high risk of contamination, [Dkt. No. 1-7] ¶ 47, but the <u>Gonzalez</u> complaint does not allege this conduct by any Averhealth employee. What the factual allegations have in common is a similar policy—prioritizing speed over accuracy—and one implementation method in common—use of faulty calibration curves. Beyond these general similarities, the complaints allege plaintiff-specific situations that include several other alleged violations by Averhealth, any combination of which could have caused plaintiffs' injuries.

In addition to the factual differences between the two claims, there are also important legal differences. Although the common law claims overlap, the statutory claims in <u>Gonzalez</u> were brought under Missouri law, whereas the statutory claims in <u>Foulger</u> were brought under Arizona, Massachusetts, and Michigan law. The difference in governing law underscores the individualized aspects of each plaintiff's respective claims; that is, the alleged injuries occurred in different jurisdictions. Because of all these factual and legal differences, the <u>Gonzalez</u> and <u>Foulger</u> lawsuits are not the same or related claims, which means that the <u>Foulger</u> litigation qualifies as a claim covered by the Navigators Policy.

    2. Exclusion Y

Alternatively, Navigators argues that it is not obligated to defend Averhealth against <u>Foulger</u> because of Exclusion Y in the Navigators Policy, which excludes coverage for "any Claim that was reported to, or covered under, another program of insurance prior to this policy." [Dkt. No. 7-2] at 19. Navigators bases this argument on Averhealth's reporting a potential new claim "to [Columbia] under a prior insurance program." [Dkt. No. 37] at 21. The evidence in the record shows that Averhealth notified Columbia of a potentially related claim on May 18,

13

2022, 18 days after the Columbia Policy expired and during the Navigators Policy period. Navigators argues that the Foulger claim should be covered by the Columbia Policy because the claim was "reported to, or covered under," that policy.

This argument fails for several reasons, not least of which is that the Gonzalez and Foulger lawsuits did not constitute the same claim. Because the Court has concluded that the Foulger claim is not sufficiently related to the Gonzalez claim, Exclusion Y does not provide a basis for excusing Navigators from its obligation to defend Averhealth against the Foulger lawsuit.

3. The Columbia Policy's Notice of Potential Claims and Related Claims Provisions

Count III of the Amended Complaint seeks a declaratory judgment that Columbia is legally obligated to reimburse Navigators for amounts Navigators has spent and will spend defending Averhealth against Foulger. Resolution of Count III requires deciding whether Foulger is covered by the Columbia Policy.

As mentioned above, both the Navigators Policy and the Columbia Policy are claims-made policies. These types of policies are designed to limit insurance companies' liability for claims that arise after a policy ends. See Montrose Chem. Corp. v. Admiral Ins. Co., 913 P.2d 878, 904 (Cal. 1995), as modified on denial of reh'g (Aug. 31, 1995) ("Because the injury and negligence giving rise to a malpractice claim is often not discoverable until years after the negligent act or omission, professional liability insurance carriers, in an effort to reduce their exposure to an unpredictable and lengthy 'tail' of lawsuits, shifted to the 'claims made' policy."); see also Homestead Ins. Co. v. Amer. Empire Surplus Lines Ins. Co., 44 Cal. App. 4th 1297, 1303–04 (1996) (contrasting claims-made policies, which "limit an insurer's risk by restricting coverage to the policy in effect when a claim is asserted against the insured, without regard to the timing of the damage or injury," with "occurrence" policies, which "provide[] coverage for any

acts or omissions that arise during the policy period, even though the claim is made after the policy has expired"). Because exposure to liability under a claims-made policy ends earlier— potentially much earlier—than exposure to liability under an occurrence policy, claims-made policies are generally cheaper. To achieve the same level of coverage as an occurrence policy, an insured would have to purchase several claims-made policies.

Columbia argues that it has no duty to defend Averhealth because the <u>Foulger</u> claim was not made until after the Columbia Policy period expired. The Columbia Policy provides coverage for claims "first made against the insured during the policy period <u>and</u> reported to the insurer during the coverage relationship or any applicable extended reporting period and in accordance with the section entitled Notice of Claims and Potential Claims of the Common Conditions." [Dkt. No. 35-2] at 33 (emphasis added). The "Notice of Claims" section states that the "Insured, as a condition precedent to the obligations of the Insurer under this policy, must give the Insurer written notice of any claim as soon as possible and during the coverage relationship. . . . Insured may have up to, but not to exceed, 30 days after the termination of the coverage relationship to report a claim made against the Insured during the policy period if the reporting of such claim is done as soon as possible." <u>Id.</u> at 13.

Because the <u>Foulger</u> complaint was filed nearly four months after the Columbia Policy ended, as Columbia correctly argues, "by definition" the lawsuit did not occur during the "coverage relationship," which is a condition precedent to Averhealth receiving coverage under the policy. [Dkt. No. 40] at 4. Moreover, because the Court has found that the <u>Foulger</u> complaint did not constitute the same or related claim as the <u>Gonzalez</u> litigation, Columbia has no obligation to provide coverage.

The other relevant provision of the Columbia Policy, Notice of Potential Claims, states that "[i]f during the coverage relationship any authorized insured becomes aware of: with respect

15

to the Professional Liability Coverage Part, any act, error or omission in the rendering of professional services . . . then any claim, whenever made, that arises out of such reported act, error or omission or such injury, occurrence or offense shall be deemed to have been made at the time such written notice of the potential claim was first given to the Insurer." [Dkt. No. 35-2] at 13. Certainly, the claim about Averhealth using defective sample collection methods as well as claims that its conduct violated Arizona, Massachusetts, and Michigan state laws were not issues in Gonzalez and did not arise out of the Gonzalez litigation. Having determined that the claims are not related, the rule that claims-made policies cover only claims made and reported during the policy period applies. Accordingly, the Navigators Policy covers the Foulger litigation up to its policy limits, and Columbia has no obligation to defend Averhealth or to reimburse Navigators.

### III. CONCLUSION

The Court has resolved the parties' motions for summary judgment solely on the bases of the plain terms of the governing insurance contracts, the case law discussing related claims, and analyzing the two lawsuits, but there are also strong equitable considerations that reinforce the Court's conclusion that the Navigators Policy covers the Foulger litigation. Averhealth purchased comprehensive claims-made insurance policies from both defendants, never had a gap in coverage, and promptly reported the Foulger lawsuit to Navigators. Moreover, when Averhealth applied to Navigators for a claims-made policy, it fully disclosed the Gonzalez litigation. With knowledge that Gonzalez had started out as a class action but was resolved with only two individual plaintiffs being compensated, Navigators nevertheless agreed to provide Averhealth with a claims-made policy containing generic language about related claims without any specific carveouts. Given the clear language in the policies at issue, the material differences between the claims in Gonzalez and Foulger, and Navigators' full notice of the Gonzalez

litigation, Virginia's approach to construing insurance policy disputes in favor of coverage fully supports denying Navigators' Motion for Summary Judgment and granting defendants Columbia's and Averhealth's cross-motions for summary judgment.

For these reasons, by an Order accompanying this Memorandum Opinion, the Court will enter declarations that, to the extent of its policy limits, Navigators has a duty to defend Averhealth in the <u>Foulger</u> litigation and to indemnify Averhealth from any judgment resulting therefrom, and that Columbia has no obligation to reimburse Navigators for the costs it has incurred in defending Averhealth.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

Entered this 18th day of July, 2025.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge